UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF FLORIDA

CIVIL ACTION NO._____

5:14-cv-433 oc-22PRL

| | |
|---|---|
| DANA P. BRIGHAM; | ) |
| PATRICIA M. BRIGHAM, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| PATLA, STRAUS, ROBINSON | ) |
| & MOORE, P.A., a North Carolina | ) |
| Professional Association; | ) |
| STEVEN I. GOLDSTEIN, Individually | ) |
| and as Shareholder and/or Partner in and | ) |
| to Patla, Straus, Robinson & Moore, P.A.; | ) |
| ROBERT A. FREEMAN, III, | ) |
| Individually and as Shareholder | ) |
| and/or Partner in and to Patla, Straus, | ) |
| Robinson & Moore, P.A., | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

FILED

COME NOW, Plaintiffs DANA P. BRIGHAM, *Pro Se*, and PATRICIA M.

BRIGHAM, *Pro Se,* and sue Defendants PATLA, STRAUS, ROBINSON & MOORE, P.A.,

a North Carolina Professional Association, and STEVEN I. GOLDSTEIN and ROBERT A.

FREEMAN, III, Individually and as Shareholders and/or Partners in and to PATLA,

STRAUS, ROBINSON & MOORE, P.A., and allege that:

1.  This Court has jurisdiction pursuant to United States Code, Title 28, §1332,

because the matter in controversy is a civil action that exceeds the sum or value of $75,000,

exclusive of interest and costs, and is between:

07/30/14
OCASO77  $400.°°

Plaintiff Dana P. Brigham, domiciled in and a citizen of the State of Florida,

Plaintiff Patricia M. Brigham, domiciled in and a citizen of the State of Florida,

and

Defendant Patla, Straus, Robinson & Moore, P.A., formed as a professional association duly authorized by the State of North Carolina, with its  principal place of business in Asheville, North Carolina;

Defendant Defendant Steven I. Goldstein, Individually and as Shareholder and/or Partner in and to Patla, Straus, Robinson & Moore, P.A., and domiciled in and a citizen of the State of North Carolina;

Defendant Robert A. Freeman, III, Individually and as Shareholder and/or Partner in and to Patla, Straus, Robinson & Moore, P.A., and domiciled in and a citizen of the State of North Carolina.

2.  At all times relevant hereto, Defendants were duly licensed to practice law and were

formed as an enterprise to practice law in the State of North Carolina, as defined by

N.Car.Gen.Stat. §84-2.1.[1]

3.  At all relevant times hereto, Defendants did practice law in and through lawyer-client

Account No. 18970-00A, and in the performance of their professional duties did share privity of

contract and had a fiduciary relationship of trust and confidence with Plaintiff Dana P. Brigham

---

[1]     The phrase "practice law" as used in this Chapter is defined to be performing any legal service for any other person, firm or corporation, with or without compensation, specifically including the preparation or aiding in the preparation of deeds, mortgages, wills, trust instruments, inventories, accounts or reports of guardians, trustees, administrators or executors, or preparing or aiding in the preparation of any petitions or orders in any probate or court proceeding; abstracting or passing upon titles, the preparation and filing of petitions for use in any court, including administrative tribunals and other judicial or quasi-judicial bodies, or assisting by advice, counsel, or otherwise in any legal work; and to advise or give opinion upon the legal rights of any person, firm or corporation: Provided, that the above reference to particular acts which are specifically included within the definition of the phrase "practice law" shall not be construed to limit the foregoing general definition of the term, but shall be construed to include the foregoing particular acts, as well as all other acts within the general definition.

and with Plaintiff Patricia M. Brigham, intended as a third party beneficiary, over the period throughout 33 billing statements listing substantial activities beginning April 22, 1991 and ending October 13, 2006, in and to the State of Florida within the reach of and consistent with Florida's long arm jurisdiction.

4. During the period of Account No. 18970-00A, Defendants neglected and failed to perform the duties and services inextricably intertwined with and/or implied in North Carolina law practice which they agreed to perform for or on behalf of Plaintiffs when they accepted employment to avoid any unlawful and/or conflicting transaction in and to 13 parcels of land situated in or about Micaville, in Yancey County, North Carolina, and that phase of Florida estate planning for Marion W. Brigham with her Florida lawyer, Harvey Burger (lawyer Burger).

5. Marion W. Brigham died June 15, 2002. The place of death was Manatee County, Florida, in the Middle District of Florida, where a substantial part of the events giving rise to the claims herein occurred, including but not limited to original jurisdiction over Marion's estate, still pending in Manatee County and subject to a final determination in Florida's Second Appellate District, the venue where, together with Lake County, Plaintiffs were deprived of their property in excess of $2 million caused by Defendants' failure to exercise reasonable care, in part but not in whole as set forth hereinafter.

6. Upon the November 14, 1982, death of her husband E. F. P. Brigham, Marion W. Brigham, domiciled in Florida, became the sole owner of a North Carolina residence included in the 13 parcels of land (supra ¶4).

7.  For her estate planning, Marion retained Florida lawyer Burger, duly licensed to practice law as a member of The Florida Bar, also a Certified Public Accountant and former Internal Revenue Service agent with estate planning expertise.

8.  The original intention of Marion's estate planning for the 13 parcels (supra ¶4) was to memorialize her husband, to avoid confiscatory federal estate taxes, to avoid any death hold by North Carolina upon the 13 parcels (supra ¶4), to avoid any unlawful and/or conflicting trans-action in and to 13 parcels of land regarding trusteeship and to avoid a family feud first declared January 1, 1972, and perceived by Marion to betray the filial relationship and be a breach of part-nership with their father and senior partner in and to his Florida law firm of Brigham & Brigham.

9.  Over a period of 18, years lawyer Burger counseled Marion in and to her estate plan-ning, to be administered by Plaintiff Dana P. Brigham with Marion as a Co-Trustee in the Marion W. Brigham Revocable Trust executed in lawyer Burger's law office on July 13, 1990 (Exhibit A hereto).[2]

10.  Exhibit A is signed on Page 30 and was produced from Defendants' files, Bate stamped as Page 000321, showing Marion as Settlor and Plaintiff Dana P. Brigham and Marion as Co-Trustees.

11.  Exhibit A contains Article XVII, entitled, "FLORIDA LAW CLAUSE," stating that:

---

[2]    A revocable trust which does not create any vested interest prior to death is to be distinguished from a Land Trust pursuant to Florida Statute § 689.071, which irrevocably vests title to real property in the trustee, requires a recorded deed, and separates the interest of the beneficiary for assignment as personal property.

All questions concerning the meaning and intention of the terms of this instrument and concerning its validity and all questions relating to performance under it shall be judged and resolved in accordance with the laws of the State of Florida.

12. Exhibit A also identifies the 13 parcels (supra ¶4), which included Item #2, also known as "Cloud Valley," reading:

PERSONAL RESIDENCE, NORTH CAROLINA
Land and buildings located on Aylers Creek Road, Crabtree Township, Yancey County, North Carolina, (see also Pages 15-125 (Parcel I) of Appraisal of Brigham Tree Farm Properties, Yancey County, North Carolina, and Pages 24-25 for a listing of the land, land improvements and building improvements.)

13. On or about April 22, 1991, Plaintiff Dana P. Brigham contacted Defendant Steven I. Goldstein in North Carolina, requesting that Defendant represent the signors in, to and about the contents of Exhibit A and its listed 13 parcels (supra ¶4), including Marion's personal residence, also known as "Cloud Valley" (supra ¶12), as confirmed by letter of April 22, 1991, enclosing the trust document (Exhibit A). That letter (without Exhibit A) is attached hereto as Exhibit B.

14. Defendants accepted the representation, and confirmed it by establishing lawyer-client Account No. 18970-00A, resulting in a billing statement of July 10, 1991 (Exhibit C hereto), documenting both the April 22,1991, telephone conference and a May 8, 1991, review of Exhibit A by and between Defendant Freeman and Defendant Goldstein.

15. After Marion's June 15, 2002, death and commencement of litigation in Marion's estate, Defendants, by deposition and trial testimony, posthumously disavowed their representation of Marion W. Brigham in conflict with Plaintiff Dana P. Brigham's understanding and sworn testimony, thus disclosing Defendants' previously concealed conflict of interest, which was both

a grossly negligent act and a breach of the fiduciary relationship inextricably intertwined, inherent and implicit in and to the establishment of Client Account No. 18970-00A.

16. On July 12, 1991, lawyer Burger traveled from Florida to confer with Marion W. Brigham at her North Carolina residence in preparation for a pre-scheduled conference on her behalf with Plaintiffs and Defendants in their Asheville, North Carolina office.

17. It was understood and agreed at the Asheville conference that Marion W. Brigham intended to create a Land Trust in North Carolina consistent with Florida Statute § 689.071, which required a Land Trust to use specific language and which was reviewed by Defendants showing the Trustees of Exhibit A, adding Plaintiff Patricia M. Brigham as Sucessor-Trustee, and represented to be consistent with North Carolina law to accomplish the intentions of Marion W. Brigham by and through a Land Trust and recorded deed on the 13 parcels (supra ¶4).

18. Following the Asheville conference and in reliance thereon, lawyer Burger and Defendant Steven I. Goldstein jointly drafted the LAND TRUST AGREEMENT FOR THE E.F.P. BRIGHAM LAND TRUST NO. 1, naming Plaintiffs to sign as Trustee and Successor Trustee (attached as Exhibit D), which became the model form for six (6) other Land Trusts with identical language used over a period from September 28, 1991 through August 22, 1994, and which states, as relevant here:

> Page 1:  WHEREAS, it is further the intent of the Trustee to take title to the property in accordance with the provisions of Section 689.071, Florida Statutes and the applicable provisions of the North Carolina General Statutes, as amended from time to time. . . .
>
> Page 1, ¶ 1:  PROPERTY:
> Title to the property shall be conveyed to the Trustee in accordance with and the rights of the parties shall be governed, to the extent applicable, by the provisions

of Section 689.071, Florida Statutes, and applicable provisions of the North
Carolina General Statutes, as amended from time to time.  The Trustee agrees to
accept the deed to the Property and to cause said deed to be recorded in the Public
Records of Yancey County, North Carolina, and to hold title to the Property for
the uses and purposes herein stated. . . .

Page 10, ¶ 13: FLORIDA LAW GOVERNS CONSTRUCTION:
This agreement is being executed in and shall be governed by and construed and
enforced in accordance with the laws of the State of Florida. The Trustee shall
have the laws of North Carolina apply to the extent that he deems it necessary or
advisable to effectuate the intent of this Agreement. . . .

Page 12, ¶ 19: EXCULPATORY CLAUSE:
The Trustee shall not be liable for any negligent act or omission.  The only
liability of the Trustee and the only claim that may be asserted by any Benefici-
ary(ies) against the Trustee shall be for fraud, gross negligence, or willful
misconduct.

19. Exhibit D and the six (6) other Land Trusts, which copied its form to include Plaintiff

Patricia M. Brigham as Successor Trustee, all required Defendants to prepare deeds to be

recorded to complete the Land Trust agreement.

20. A review of the deed for Exhibit D (attached as Exhibit E) and all the other deeds

shows that the deeds failed to qualify as a "recorded instrument" to create a Florida Land Trust

under Florida Statute § 689.71, and that Defendant Goldstein was the lawyer who created and

transferred the deed to North Carolina authorities for recordation.  Exhibit E and the other deeds

specifically state that:

This instrument was prepared by Steven I Goldstein-Patla, Straus, Robinson &
Moore, P.A., 29 North Market Street, Asheville, NC 28801.

21. Simply put, Defendants not only failed in their duty to disclose any perceived conflict

of interest, but also failed in their duty to include the language of Florida Statute § 689.071 as

agreed, and those failures were jointly and severally the proximate cause for a latent deficiency which subverted, frustrated and ultimately and totally wrecked the estate planning intention of Marion W. Brigham and damaged Plaintiffs.

22. The EFP Brigham Land Trust and deed became the model and was relied upon for another Revocable Trust, which includes both Plaintiffs, and six (6) other Land Trusts, all including both Plaintiffs, and deeds during the period of Client Account No. 18970-00A, and in particular a second Asheville conference three (3) years later on August 22, 1994, followed by the six (6) Land Trusts and deeds reviewed, created, drafted and recorded by Defendants, which failed to include the language of Florida Statute § 689.071, not limited to the Cloud Valley Land Trust No. 1 deed, filed August 25, 1994 (attached as Exhibit F).

23. Defendants failed to advise Plaintiffs or Marion as to any conflict of interest in and to Client Account No. 18970-00A, or that her intended gift of Cloud Valley land represented by Exhibit F, had any latent defects, was unlawful, and/or a conflicting transaction.

24. Prior to and after Exhibit F, not only did Marion direct Plaintiffs not to disclose her confidential estate planning affairs to any sibling, but Plaintiffs had no duty to make any disclosures to beneficiaries as to Marion's 1990 or 1994 Revocable Trusts. Accordingly, Plaintiff Dana P. Brigham never informed his brothers, sister, nephews or nieces of the gift of the Brigham Tree Farms Property to him by Marion, represented by Exhibit F, and when as a solution to the family feud Marion and Plaintiff Dana P. Brigham offered son/brother Toby total ownership of the 13 parcels in a letter of March 19, 1997, that offer was refused by Toby before any transaction requiring full disclosure occurred.

25. Upon the death of Marion W. Brigham on June 15, 2002, in Manatee County, Florida, the feuding family members initiated litigation establishing priority of jurisdiction in Manatee County, but then re-filed in Dade County, Florida.

26. After 21 days of trial and a Final Judgment of July 17, 2007 (Judgment 2007) (attached as <u>Exhibit G</u>), the trial court determined by substantial competent evidence that no claim survived Marion and, specifically, that the feuding family members had no cause of action for fraud or undue influence.  That determination was consistent with Exculpatory Clause #19 (supra ¶18) in all seven (7) Land Trusts.

27. The feuding family members appealed *de novo* and reversed Exhibit G by the decision in *Brigham v. Brigham,* 11 So.3d 374 (Fla. 3d DCA 2009) (Decision 2009), against which Exhibit G, including but not limited to the vehicle of Marion's intended estate plan crashed and was totally wrecked because it was corrupted and/or flawed by Defendants' conflict of interest and/or latent defect.

28. Decision 2009 confirmed that the appeal was *de novo,* consistent with the doctrine of *Shaw v. Shaw,* 334 So.2d 13 (Fla.1976), and its progeny, showing at Pages 380-384 and Page 386 that Judgment 2007 would have avoided the crash but for:

> @380:  Robert Freeman, a lawyer identified by Dana as Marion's lawyer, testified that he never met or spoke to Marion prior to August 22, 2004, the day that she came into his office to sign the documents supplied by Dana. Freeman testified that no one represented Marion at the meeting, no one explained the trust documents to Marion and no one explained or confirmed the fact that Marion was allegedly making an oral gift of the Brigham Tree Farms Property.

> @ 383:  A review of the Deed for the EFP Trust (the "EFP Trust Deed") from Marion to Dana, as trustee to the EFP Trust, shows that it failed to qualify as a "recorded instrument" to create a Florida Land Trust under section 689.71. . . . . .

. . . .

@384:  The EFP Trust Deed failed to contain language that conferred on Dana, the trustee, the power and authority "either to protect, conserve and to sell, or to lease, or to encumber, or otherwise to manage and dispose of the real property described in the recorded instrument."  Because Dana, as the lawyer that created and transferred the Deed to North Carolina attorneys for recordation, failed to include the formalities in the Deed required to create a Florida Land Trust under section 689.71, it is a trust regulated by chapter 737.

@386:  Accordingly, because we conclude that the Brigham Tree Farms Property transfer must be voided, the Final Judgment dealing with all of the other conflicted transactions where Dana and Patricia transferred property to themselves must be reversed.

29.  The language of Decision 2009 shows proximate cause that but for the false and/or grossly negligent testimony of Robert Freeman, et. al., disclosing conflict of interest violating the attorney-client relationship established by lawyer-client Account No. 18970-00A, the grossly negligent failure of Defendants to include the formalities in the deed, and/or failure to require Marion's written assignment in and to the Land Trust transactions, not limited to Cloud Valley, Judgment 2007 would have been affirmed by Decision 2009.

30.  However, Decision 2009 determined that in the absence of Florida Statute § 689.071 no Land Trust was created and, therefore, the absence of Florida Statute § 689.071 was a proximate cause of the retroactive application of Florida Statute § 737.403(2) to vacate Judgment 2007 and replace it with the second Final Judgment of February 22, 2011 (Judgment 2011) (attached as Exhibit H), affirmed August 8, 2012, and resulting in damage to Plaintiffs.

31.  At all relevant times, Plaintiffs relied upon Defendants and each of them in and to lawyer-client Account No. 18970-00A and to provide legal representation to Plaintiffs and Marion, as set forth herein.

-10-

32. Defendants owed a duty to Plaintiffs to exercise that level of skill and care which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by similar and reasonably careful real estate and estate planning lawyers.

33. Defendants breached their aforesaid duty to Plaintiffs as set forth herein.

34. As a direct and proximate result of the aforesaid legal malpractice, negligence and breach of fiduciary relationship on the part of Defendants, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment for compensatory damages against Defendants, the costs of this action, prejudgment interest, attorney's fees under the wrongful act doctrine, and such other and further relief as this Court deems just.

Respectfully submitted,

_____
DANA P. BRIGHAM, *Pro Se*
8041 Bridgeport Bay Circle
Mt. Dora, Florida 32757
Telephone:  941/776-0109
E-Mail:  dpbrigham@gmail.com

_____
PATRICIA M. BRIGHAM, *Pro Se*
8041 Bridgeport Bay Circle
Mt. Dora, Florida 32757
Telephone:  941/776-0109

Consistent with 28 U.S.C.S. §1746, Unsworn declarations under penalty of perjury, I (WE) verify under the penalty of perjury that the foregoing is true and correct.

_____
DANA P. BRIGHAM, *Pro Se*

_____
PATRICIA M. BRIGHAM, *Pro Se*

Date:_____July 30, 2014_____

REVOCABLE TRUST

OF

MARION W. BRIGHAM



EXHIBIT
P-Trial
#5
Entered
ALL-STATE LEGAL®

# TABLE OF CONTENTS

| ARTICLE | HEADING | PAGE NUMBER |
|---------|---------|-------------|
| I | GENERAL DUTIES OF TRUSTEE | 2 |
| II | FAMILY MEMBERS | 2 |
| III | RIGHTS RESERVED BY SETTLOR | 2 |
| IV | INDIVIDUAL RETIREMENT ACCOUNTS, INSURANCE AND OTHER DEATH BENEFITS | 3 |
| V | DISPOSITION DURING THE LIFE OF SETTLOR | 5 |
| VI | PAYMENT OF TAXES | 7 |
| VII | DISPOSITION OF TRUST ESTATE UPON DEATH OF SETTLOR | 8 |
| VIII | TRUST FOR BENEFICIARIES | 14 |
| IX | VESTING CLAUSE | 17 |
| X | RESTRAINT UPON ALIENATION | 17 |
| XI | PROVISIONS RELATING TO TRUSTEESHIP | 17 |
| XII | TRUSTEE'S POWER AND DIRECTIONS | 21 |
| XIII | DEFINITIONS | 28 |
| XIV | SEVERABILITY | 29 |
| XV | EXECUTION OF DUPLICATES | 29 |
| XVI | TRUSTEE'S CERTIFICATE | 29 |
| XVII | FLORIDA LAW CLAUSE | 29 |
| | EXHIBIT "A" | 33 |

Produced by Goldstein

000793

## AMENDED MARION W. BRIGHAM

### REVOCABLE TRUST NUMBER ONE

THIS AMENDED REVOCABLE TRUST AGREEMENT, NUMBER ONE, is made and entered into this 13th day of July 1990, by and between MARION W. BRIGHAM, of Dade County, Florida, as Settlor, hereinafter referred to as "Settlor", and MARION W. BRIGHAM and DANA P. BRIGHAM, of Dade County, Florida, as the Co-Trustees, hereinafter referred to as the "Trustee"; and TOBY P. BRIGHAM, of Dade County, as the Successor Trustee, hereinafter referred to as the "Successor Trustee".

### W I T N E S S E T H:

WHEREAS, Settlor and Trustee executed that certain Trust Agreement known as the Marion W. Brigham Trust, (Trust Agreement) dated the 11th day of April, 1985; and

WHEREAS, Settlor reserved the right to amend the Trust Agreement in Article II; and

WHEREAS, Settlor desires to exercise her right to amend the Trust Agreement; and

WHEREAS, Settlor and Trustee desire to compile the terms of the Trust Agreement as originally prepared and all additional changes now desired to be made by the Settlor into one document for ease in review and understanding; and

WHEREAS, to combine the original Trust Agreement and the additional amendments into one document, the Settlor and Trustee have executed this Amended Marion W. Brigham Revocable Trust Agreement Number One to restate, in its entirety, the terms of the same.

NOW, THEREFORE, the parties hereto agree as follows:

The Settlor has previously delivered to the Trustee the property described on Schedule "A" attached hereto, and by this reference incorporated herein, and the Trustee agrees to hold, administer and distribute all of the aforesaid assets, together with all additions hereto and all reinvestments thereof, as the corpus of the amended Marion W. Brigham Revocable Trust Agreement Number One, in accordance with the terms and provisions hereinafter

Page 1 of Amended Marion W. Brigham Revocable Trust *M.W.B*

set forth. The Settlor may from time to time deliver more property to the Trustee or designate the Amended Marion W. Brigham Revocable Trust Agreement Number One as the beneficiary of certain insurance policies on her life, or as the beneficiary of her probate estate or any part thereof. All property subject to this Trust, all of which is referred to in this instrument as the "Trust Estate", shall be held, administered and distributed on the following terms and conditions:

### ARTICLE I

### GENERAL DUTIES OF TRUSTEE

A.   During the term of this Trust, the Trustee shall hold, manage, invest and reinvest the Trust Estate, collect the income and profits therefrom, pay the necessary expenses of administration, and distribute the net income and principal as hereinafter provided.

B.   Trustee shall always be authorized and empowered to receive additional property, by gift, will or otherwise, from the Settlor or any other person as additions to the Trust. Upon receipt of such additional property, the Trustee shall administer and distribute the same as part of the Trust Estate.

### ARTICLE II

### FAMILY MEMBERS

At the time of the execution of this Amended Trust, the Settlor is a widow. The Settlor has four (4) children whose names are as follows: JERRE BRIGHAM FORBES, DANA P. BRIGHAM, EDWARD M. P. BRIGHAM and TOBY P. BRIGHAM. All references in this Amended Trust Agreement to the "Settlor's children" are to the children named in this Article.

### ARTICLE III

### RIGHTS RESERVED BY SETTLOR

During the Settlor's life, except during any period of adjudicated incompetency, the Settlor shall have the right, to be exercised from time to time by writing or writings signed and acknowledged by her in the manner required by the laws of the

Page 2 of Amended Marion W. Brigham Revocable Trust   *m W. B*

000795

State of Florida for the recording of a deed of real property to be effective when delivered to the Trustee:

A. To revoke this instrument entirely and to receive from the Trustee all Trust property remaining after making payment or provisions for payment of all expenses connected with the administration of the Trust.

B. From time to time, to alter or amend this instrument in any and every respect.

C. From time to time, to change the identity or number, or both, of the Trustee.

D. From time to time, to withdraw from the operation of this Trust, any part or all of the Trust property.

E. From time to time, to change the name of the beneficiary of any Pension and Profit Sharing Plans, Individual Retirement Accounts (IRA) or Keogh Accounts, insurance policies or other death benefits, without the consent of the Trustee or any beneficiary hereunder.

F. Upon the death of the Settlor, this Trust shall become irrevocable.

### ARTICLE IV

### INDIVIDUAL RETIREMENT ACCOUNTS,

### INSURANCE AND OTHER DEATH BENEFITS

A. The Trustee shall be under no obligation to pay any premiums, assessments or other charges necessary to keep any policy of life insurance subject to this Trust in force, nor shall the Trustee be under any obligation to ascertain whether the same have been paid, or to notify the beneficiaries of this Trust of nonpayment of premiums. The Trustee shall safeguard any policy which may be deposited with the Trustee, but shall not require such deposit.

B. Upon the death of the Settlor, if the proceeds of any IRA, or Keogh Accounts, life insurance policies or any other death benefits shall become payable, the Trustee shall promptly take such action as may be necessary to collect such proceeds and benefits as may be payable to the Trustee as beneficiary. When the

Page 3 of Amended Marion W. Brigham Revocable Trust M.W.B.

proceeds of any IRA Accounts, Keogh Accounts, or life insurance, or any other death benefits shall become payable, the Trustee shall promptly furnish to the proper institution or entity then holding said IRA accounts, Keogh accounts, insurance policies, or any other death benefits, evidence of the death of the Settlor and shall collect or receive the proceeds of such accounts, insurance or other benefits.  To facilitate the receipt of such sums, the Trustee shall have the power to execute and deliver receipts and other instruments and to take such action as is appropriate for the collection thereof, including the authority to compromise or adjust disputed claims.  If payment on any policy or the collection of any sum from any IRA or Keogh Accounts or any other death benefit is contested, the Trustee may reimburse himself for any advances made or expenses incurred in collecting or attempting to collect said sums by suit or otherwise, but the Trustee shall not be required to bring any legal proceedings unless the Trustee shall have received satisfactory guarantee in advance that he will be reimbursed for all legal fees, court costs, and other expenses of such proceedings and have received satisfactory indemnification against any liability to which the Trustee may be subject to by reason of such legal proceedings.

C.   It is the intent of the parties that only the net proceeds of any life insurance policies payable to the Trustee shall be collected hereunder.  Accordingly, unless the Settlor shall provide specifically to the contrary in her Will, all loans, advances and other charges against any account or policy shall be paid from the proceeds thereof, and only the surplus proceeds shall be claimed and collected by the Trustee hereunder.

D.   Neither the holder of any IRA or Keogh Accounts nor any insurance company, nor any other institution paying death benefits, shall be responsible for the application or disposition of the proceeds of such account or policy by the Trustee.  Payment to and receipt by the Trustee of such proceeds shall be a full discharge of the liability of such entities under the account or policy.

Page 4 of Amended Marion W. Brigham Revocable Trust  *M.W.B.*

E.   The Trustee, in his sole and absolute discretion, may elect any of the optional modes of payment provided in any accounts or policies where such modes of payment are permitted to be made by the Trustee according to the contracts, provided that the elected mode of payment will result in the lowest overall taxes, both Federal estate and income taxes, being paid by the Trustee and the Settlor's Estate.   The Trustee shall take into consideration the Federal estate tax obligations of the Settlor's estate, the income tax obligations of the Settlor, her estate and this Trust, and the income tax obligations of the beneficiaries of the Settlor's Estate and this Trust resulting from the elected mode of payment.

F.   For the purposes of making distribution under this Trust Agreement to the beneficiaries, the Trustee shall report and treat on the Trust records all of the proceeds from the Settlor's IRA Accounts, Keogh Accounts or life insurance policies and other death benefits as part of the principal of the Trust Estate regardless of the income treatment reported and given the distributions by the banks, companies or other institutions.

G.   The Trustee shall be prohibited from using any of the payments and proceeds from the Settlor's Pension and Profit Sharing Plans, IRA Accounts, Keogh Accounts, and insurance policies, for the benefit of the Settlor's Estate, including but not limited to the payment of debts, taxes or other administrative expenses, unless said payments and proceeds shall be included in the Settlor's gross estate for Federal estate tax purposes.

## ARTICLE V
### DISPOSITION DURING THE LIFE OF SETTLOR

A.   During the life of the Settlor, the Trustee shall pay so much or all of the income and principal of the Trust as the Settlor shall, from time to time, direct to or for the benefit of the Settlor, or as the Settlor may otherwise direct.

B.   If at any time or times the Settlor is under a legal disability or by reason of illness or mental or physical disability, as hereinafter defined, is, in the unanimous opinion

Page 5 of Amended Marion W. Brigham Revocable Trust *M W B*

of all the Successor Trustees named in Article XI, unable to properly manage her affairs, the Trustee may use the net income and principal, to the extent there are assets in the Trust Estate, as the Trustee shall deem best for the care, support and comfort of the Settlor and any of the persons dependent upon her, or for any other purposes the Trustee shall consider to be for the Settlor's best interests, provided that such payment or application will not result in the final termination of this Trust, if the Settlor has named the Trust beneficiary of any of her Pension and Profit Sharing Plans, IRA Accounts, Keogh Accounts, life insurance or other death benefits. Any rules of trust laws which may require impartiality as between the immediate beneficiaries and the ultimate beneficiaries shall be disregarded, and the Trustee shall exercise her authority to encroach upon principal without regard to the interest of the ultimate beneficiaries. The Trustee acknowledges that the Trust may be named beneficiary of some or all of the Settlor's benefits under her Pension and Profit Sharing Plans, IRA Accounts, Keogh Accounts, life insurance policies or other death benefits.

C.   During the life of the Settlor, it is the Settlor's intention that she remain in her personal residence.   The new residence must have the same standards of living as the present residence of the Settlor. The Settlor hereby expresses her strong desire to continue to reside in her home in the event of her disability. To this end, the Trustee is directed to expend such portions of principal as may be necessary to pay nursing and medical expenses of the Settlor incurred so that she might be permitted to continue residing in her personal residence. Such expenditures would include, but not be limited to, expenditures incurred to modify the Settlor's personal residence to accommodate her medical needs. The Settlor acknowledges that the expenditure of the Trust assets for these purposes may result in a more rapid diminution of the assets than might otherwise be the situation if the Settlor was living in an institutional setting, but the Settlor, nevertheless, states her intention that the Trustee

Page 6 of Amended Marion W. Brigham Revocable Trust  *Yh.w. B*

Produced by Goldstein

000799

utilize the Trust assets for the purposes set forth herein for the Settlor. The residence for the Settlor should be a substitute residence of the Settlor's choice, unless the Settlor agrees to be moved to a custodial facility. If the Settlor is under a mental or physical disability, the Settlor may be moved to a custodial facility only if all of the Successor Trustees consent to such move.

## ARTICLE VI

### PAYMENT OF TAXES

A.   In the event any of the assets of the Trust Estate shall be included in the Settlor's gross estate for Federal estate tax purposes, the Trustee or the Successor Trustee shall pay to the estate of the Settlor an amount equal to the proportionate share of taxes and duties assessed against the Settlor's estate as a result of the Settlor's death by any foreign or domestic government, which is attributable to those assets of the Trust Estate which are included in the Settlor's gross estate for Federal estate tax purposes. In no event shall any property or assets in or subsequently acquired by the Trust, including any proceeds from any life insurance policies or other death benefits which are not included in Settlor's gross estate for Federal estate tax purposes, be used or liable for, or encumbered or liened in any manner, for the payment or satisfaction of any taxes or duties owed to or by Settlor's estate or Personal Representative.

B.   If the Trustee receives a certification from the Personal Representative of the Settlor's estate pertaining to the payment of estate taxes and expenses, the Trustee shall pay to the Personal Representative from the assets of the Trust, the amounts requested in such certification and the Trustee may rely on such certification without any requirement that the Trustee independently make inquiry into the amounts reflected in such certification or the necessity of such payment pursuant to the Settlor's Will.

Page 7 of Amended Marion W. Brigham Revocable Trust M.W.B

Produced by Goldstein

## ARTICLE VII

### DISPOSITION OF TRUST ESTATE UPON DEATH OF SETTLOR

Unless sooner terminated as hereinafter provided, upon the death of the Settlor, and after the collection of the proceeds from the various insurance policies and other death benefits payable to the Trust, if any, and after the pour over of assets from the Settlor's Estate, if any, the Trustee shall distribute or hold, administer and distribute the assets of the Trust Estate as follows:

A. The Settlor presently maintains a tree farm in Yancey County, North Carolina. The manager of this farm has been Roger Miller who has been employed by the Settlor and her husband when he was alive for a period in excess of ten (10) years. In recognition of the valuable services he has contributed to the Settlor and in recognition of the care that he has provided to the Settlor, it is the Settlor's desire that if Roger Miller survives the Settlor, and is working for the Settlor at the time of her death, then the Trustee shall disburse the cash sum of Five Thousand ($5,000.00) Dollars to Roger Miller, outright and not in trust. Further it is the settlor's intention that if there is any lien remaining on the personal truck used exclusively by Roger Miller on the Brigham Tree Farm at the time of the Settlor's death, then the Trustee shall pay off said lien so that the truck shall be free and clear of all liens, encumbrances or debts.

B. If Julie Lloyd survives the Settlor, then the Trustee shall give the cash sum of One Thousand Five Hundred ($1,500.00) Dollars outright and not in trust to Julie Lloyd.

C. It is the Settlor's intention that all loans that she may have given to her children or grandchildren be cancelled. The Settlor, after thorough deliberation, considers that she has treated all of her children and grandchildren equally and that no child or grandchild shall be responsible for any debt to the Settlor's estate. The Settlor in separate writings has acknowledged that she has made gifts in the past to all of her children and grandchildren in an attempt to treat all of her lineal

Page 8 of Amended Marion W. Brigham Revocable Trust *MWB*

Produced by Goldstein

descendants equally. The debts which the Settlor wishes to cancel, and which are not all inclusive and which are not included in full detail are, including but not limited to:

1. All personal loans to the Settlor's children or grandchildren;

2. To Edward M. P. Brigham all loans made in connection with the development in Orlando in which Edward either has or had an interest at any time, in addition to any other loans;

3. Toby P. Brigham any and all loans;

4. To Jerre Brigham Forbes all mortgages on any land in Colorado either known as Skull Creek, Steamboat Springs or other property in Colorado and any and all debts;

5. Dana P. Brigham any and all loans.

D. It is the Settlor's intention that since Sue Stanford has lived on the property for a period of years and has been a friend of the Brigham family, that in the event that the home property known as Cloud Valley is sold and the trailer where Sue Stanford resides has to be moved, the Settlor authorizes the Trustee to spend an amount not to exceed the cash sum of Five Thousand ($5,000.00) Dollars to be used by or on behalf of Sue Stanford to move her trailer.

E. It is the Settlor's intention that the Trustee segregate the cash sum of One Hundred Thousand ($100,000.00) Dollars to be used by the Trustee to maintain the area that the Settlor owns in North Carolina and which is known as the home property. The Settlor wishes to leave this area to her children per stirpes, but realizes that there has been a cash shortage each year of approximately Fifty Thousand ($50,000.00) Dollars. Therefore, the Settlor wishes that the Trustee maintain this property for a period of approximately two (2) years to allow the children and grandchildren sufficient time to either purchase this property from the Trust estate, to sell same or to develop the same. The Trustee is hereby given wide discretion in the management of this property and is to consult with the Settlor's children and grandchildren and to abide with a majority of their wishes with regard to the

Page 9 of Amended Marion W. Brigham Revocable Trust *M.W.B*

ultimate disposition of this property. Any child or grandchild of the Settlor may purchase any acreage at fair market value, however, it is the Settlor's preference that to the extent possible that the area known as the home place be kept intact, for at least two (2) years.

F.  It is the Settlor's desire that all of the property in North Carolina other than the home property and Hall's Chapel be sold by the Trustee at fair market value.

G.  The Trustee, upon the Settlor's death, shall distribute all of the property located in Colorado, which is owned by either the Settlor or by the Trustee of this trust, to Jerre Brigham Forbes if she survives the Settlor and if not, then to her lineal descendants.

H.  The residue of this trust estate after the above bequests shall be distributed by the Trustee to the Settlor's then living children, in equal shares, in trust on the following terms and conditions:

At the time of the Settlor's death, the entire residuary estate shall be divided into four (4) separate, but equal shares, so as to provide one trust for each then living child of the Settlor. If a child of the Settlor has predeceased the Settlor, then his or her separate trust shall then be held in trust for the then deceased child's beneficiaries as hereinafter provided in this Article. Each such separate trust shall constitute and be administered as a separate trust hereunder. The name of each trust shall be known by the name of the child of the Settlor for whom the trust was created. The names of the Settlor's children are as set forth in ARTICLE II of this Agreement. Separate books and records shall be kept for each trust and to the extent possible physical division of the assets shall be made as to each trust. However, physical division of the assets is not required and the assets may be commingled as long as separate books and records are kept as to each trust. The income and corpus of each trust shall be held, administered and disposed of by the Trustee hereinafter named, as hereinafter provided:

Page 10 of Amended Marion W. Brigham Revocable Trust M.W.B.

Produced by Goldstein

000803

1.   The trust referred to in this paragraph for the benefit of Edward M. P. Brigham shall be managed by the Trustee hereinafter named on the following terms and conditions:

a.   The Trustee shall pay the entire net income from this trust to or for the benefit of Edward M. P. Brigham, hereinafter referred to as the Beneficiary, annually in quarterly or more frequent installments during his lifetime.

b.   In addition, the Trustee shall pay to or for the benefit of the Beneficiary such sums from the principal of this trust as in the sole discretion of the Trustee shall be necessary for advisable from time to time for his support.

c.   During the Beneficiary's lifetime, the Beneficiary shall have the right at any time, and from time to time, to withdraw or appoint himself, or others, such amounts from the principal of the trust estate even to the point of completely exhausting the same as he, in his sole discretion, may determine. Such right of withdrawal or appointment may be exercised in each case by the Beneficiary notifying the Trustee in writing to that effect, specifying the amount of assets he desires to withdraw or appoint and promptly thereafter, the Trustee shall distribute all such items to the Beneficiary in fee or to his appointee or appointees.

2.   The trust referred in this paragraph for the benefit of Jerre Brigham Forbes shall be managed by the Trustee hereinafter named on the following terms and conditions:

a.   The Trustee shall pay as much or all of the net income and/or principal to or for the benefit of Jerre Brigham Forbes, hereinafter referred to as the Beneficiary, as long as she shall live.   These payments shall be made at intervals deemed advisable by the Trustee in his sole discretion.

b.   Upon the death of the Beneficiary, the remaining assets of this separate trust created herein for the Beneficiary shall be distributed to the Beneficiary's then living children in equal shares, outright and not in trust.   If a child of the beneficiary predeceases the survivor of the Settlor, and the

Page 11 of Amended Marion W. Brigham Revocable Trust   *M.W.B.*

000804

Beneficiary, then his or her share shall pass to his or her then living descendants, and if there are none, to the Beneficiary's then living descendants per stirpes.

3. The trust referred in this paragraph for the benefit of Toby P. Brigham shall be managed by the Trustee hereinafter named on the following terms and conditions:

a. The Trustee shall pay the entire net income from this trust to or for the benefit of Toby P. Brigham, hereinafter referred to as the Beneficiary annually in quarterly or more frequent installments during his lifetime.

b. In addition, the Trustee shall pay to or for the benefit of the Beneficiary such sums from the principal of this trust as in the sole discretion of the Trustee shall be necessary for advisable from time to time for his support.

c. During the Beneficiary's lifetime, the Beneficiary shall have the right at any time, and from time to time, to withdraw or appoint himself, or others, such amounts from the principal of the trust estate even to the point of completely exhausting the same as he, in his sole discretion, may determine. Such right of withdrawal or appointment may be exercised in each case by the Beneficiary notifying the Trustee in writing to that effect, specifying the amount of assets he desires to withdraw or appoint and promptly thereafter, the Trustee shall distribute all such items to the Beneficiary in fee or to his appointee or appointees.

d. Upon the death of the Beneficiary, the Trustee shall pay and distribute such part or all of the principal of the separate trust as may then exist and any accrued or unpaid income to or for such person or persons, including his estate, or his creditors, or the creditor's of his estate as he may, by his Last Will and Testament, direct and appoint, making specific reference to this general power of appointment hereby created. In event the Beneficiary does not exercise this general power of appointment, the remaining principal and undistributed income shall be

Page 12 of Amended Marion W. Brigham Revocable Trust  M W B.

Produced by Goldstein

000805

distributed to the Beneficiary's then living lineal descendants per stirpes, outright and not in trust.

4.   The trust referred in this paragraph for the benefit of Dana P. Brigham shall be managed by the Trustee hereinafter named on the following terms and conditions:

a.   The Trustee shall pay the entire net income from this trust to or for the benefit of Dana P. Brigham, hereinafter referred to as the Beneficiary, or his spouse, annually in quarterly or more frequent installments during their lifetime.

b.   In addition, the Trustee shall pay to or for the benefit of the Beneficiary, or his spouse, such sums from the principal of this trust as in the sole discretion of the Trustee shall be necessary for advisable from time to time for his or her support.

c.   During the Beneficiary's lifetime, the Beneficiary shall have the right at any time, and from time to time, to withdraw or appoint himself, or others, such amounts from the principal of the trust estate even to the point of completely exhausting the same as he, in his sole discretion, may determine. Such right of withdrawal or appointment may be exercised in each case by the Beneficiary notifying the Trustee in writing to that effect, specifying the amount of assets he desires to withdraw or appoint and promptly thereafter, the Trustee shall distribute all such items to the Beneficiary in fee or to his appointee or appointees. Upon the death of the Beneficiary, if he is survived by his spouse, Patricia Brigham, she shall have the same rights under this Paragraph as the Beneficiary had during his lifetime.

d.   Upon the death of the Beneficiary, the Trustee shall pay and distribute such part or all of the principal of the separate trust as may then exist and any accrued or unpaid income to or for such person or persons, including his estate, or his creditors, or the creditor's of his estate as he may, by his Last Will and Testament, direct and appoint, making specific reference to this general power of appointment hereby created. In event the Beneficiary does not exercise this general power of appointment,

Page 13 of Amended Marion W. Brigham Revocable Trust $\mathcal{MW.B}$

Produced by Goldstein

the remaining principal and undistributed income shall be distributed to the Beneficiary's spouse, if she is living and in the event that she has predeceased the survivor of the Settlor and the beneficiary of this trust, then to the trusts created herein for the then living children of the Settlor in equal shares.

### ARTICLE VIII

### TRUST FOR BENEFICIARIES

Notwithstanding any other provisions in this instrument, except for gifts of tangible personal property, and except gifts to the Settlor's children, whether outright or in trust, no gift of income or principal that otherwise would be distributed from the Settlor's estate or from this or any other trust or under a power of appointment created by this instrument shall vest except as provided in this Article in:  (a) any person who has not attained his thirty-fifth (35th) birthday at the time of distribution; or in (b) any person who, in the judgment of the Trustee making the distribution, shall be unable to manage his own property or affairs because of illness, disability, incompetency or other reason, whether or not the incompetency is adjudicated, that person being referred to hereafter as being under disability; (provided, however, if a distribution is to be made to a person underage or under disability as described above, the Trustee, in his sole  discretion, may distribute such person's share to the Trustee or Trustees of any trust that is then in existence for their benefit).  Instead, the gift that otherwise would be distributed to that person shall be distributed to the Trustee of the TRUST  FOR  BENEFICIARIES hereafter appointed, in trust, for that person and managed and distributed as follows:

A.   The Trustee shall hold the gift for each person as an undivided share for his benefit in this TRUST FOR BENEFICIARIES, which share shall be in the proportion that the value of the gift bears to the value of the entire principal of the trust at the time of the gift, including the value of the gift.  Shares of beneficiaries shall be adjusted from time to time for contributions to principal and for invasions and distributions of

Page 14 of Amended Marion W. Brigham Revocable Trust *M.W.B.*

principal and additions to principal of undistributed income. If a share exists in this Trust for a beneficiary for whom a distribution is to be made to this Trust, the distribution shall be added to the existing share in this Trust for the beneficiary in order that there will be only one (1) share under this paragraph for the same beneficiary.

B.  If in the judgment of the Trustee a beneficiary who has been under disability becomes able to manage his own property or affairs and the beneficiary has attained his thirty-fifth (35th) birthday, his share of the trust assets shall be distributed to him in the manner hereafter provided; but if he has not attained that birthday, his share in the Trust shall continue and be administered as for a beneficiary not under disability.

C.  Until a beneficiary attains his twenty-first (21st) birthday, or as long as a beneficiary is under disability, his share of the net income of the Trust shall be distributed to or for his direct or indirect benefit in the discretion of the Trustee, the distribution to be determined and made in the same manner and for the purposes for which discretionary distributions of principal are authorized. All undistributed income shall be added to the principal of the beneficiary's share in the Trust. Once a beneficiary not under disability attains his twenty-first (21st) birthday, his share of the net income shall be distributed to him.

D.  Discretionary distributions of the principal of a share in the Trust may be made from time to time to or for the direct or indirect benefit of the beneficiary of the share even though it results in exhausting the principal of the share. The distributions shall be in such amounts as in the discretion of the Trustee shall be necessary or desirable for maintenance of the beneficiary in good health and reasonable comfort, and for his education, taking into consideration the standard of living to which the beneficiary or his family is accustomed at the time of the distribution. This discretion shall be exercised after taking into consideration all other income and cash resources known to

Page 15 of Amended Marion W. Brigham Revocable Trust $\mathcal{MW.B.}$

the Trustee that are available to the beneficiary for such purposes. Education shall include, but need not be limited to, private school or preparatory school work, undergraduate work, post graduate work and professional education. Expenses of education shall include, but not be limited to, tuition, room and board, fees of the educational institution attended, books and travel to and from the educational institution.

E.    When a beneficiary not under disability attains his twenty-fifth (25th) birthday, the principal of his share in the Trust shall become available for withdrawal by him in three (3) shares at the following times: At any time thereafter the beneficiary may withdraw one of those shares equal to Twenty-Five Percent (25%) of the fair market value of the principal, valued as of the date the request is received; at any time after he attains his thirtieth (30th) birthday he may withdraw another of those shares equal to Fifty Percent (50%) of the balance, valued as of the date the request is received; and after he attains his thirty-fifth (35th) birthday he shall have the right from time to time to withdraw any part or all of his share in the Trust and to terminate the Trust as to him. This right of withdrawal shall be exercised by a request signed by the beneficiary before two (2) subscribing witnesses and directed and delivered to the Trustee.

F.    If a beneficiary shall die before termination of his interest in this Trust, then upon his death his share in the Trust shall pass to his descendants, per stirpes, then living, and, if there are none, then that share of a deceased beneficiary shall pass to the Settlor's descendants, per stirpes, then living.

G.    If in the judgment of the Trustee, the value of the principal held in this Trust does not warrant the continuance of the Trust under the circumstances then existing, the Trustee in the Trustee's sole discretion, is authorized to terminate the Trust and to distribute to each of the beneficiaries his share of the assets of his separate Trust. A distribution to a beneficiary who is a minor at the time of distribution may be made to the custodian for the minor under the Florida Gifts to Minors Act. If

Page 16 of Amended Marion W. Brigham Revocable Trust $\mathcal{M} \ \mathcal{W}. \ \mathcal{B}.$

Produced by Goldstein

there is none, the custodian may be appointed by the Trustee, and the Trustee may serve as custodian.

### ARTICLE IX

#### VESTING CLAUSE

Notwithstanding any provision of this trust to the contrary, no trust herein created shall continue beyond that period of time which would result in a violation of the Laws of the State of Florida pertaining to the administration of trusts in perpetuity. Upon the expiration of the maximum period which would not result in such violation, all such trusts then in existence shall terminate and the assets thereof shall be distributed outright and in fee to those persons who are then beneficiaries of the current income and in the proportions in which such persons are the beneficiaries, and if such proportions cannot be ascertained, then equally among such beneficiaries. Each share shall be distributed to said beneficiary, with any distribution of a share for a minor to be paid to the custodian for the minor under the Uniform Gifts to Minors Act, and if there is none, the custodian may be appointed by the Trustee, and the Trustee may serve as custodian.

### ARTICLE X

#### RESTRAINT UPON ALIENATION

Except for the right to disclaim, no principal or income distributable from any trust created under this instrument shall be subject to anticipation, assignment, mortgage or pledge in any manner by any beneficiary, or to the interference or control of any creditor or spouse of a beneficiary, and shall not be reached by any legal or equitable or other process, including bankruptcy proceedings, in satisfaction of any debt or liability of a beneficiary prior to receipt by the beneficiary.

### ARTICLE XI

#### PROVISIONS RELATING TO TRUSTEESHIP

A.    The Settlor hereby designates and appoints MARION W. BRIGHAM and DANA P. BRIGHAM as the Co-Trustees of this Trust.

Page 17 of Amended Marion W. Brigham Revocable Trust *M.W.B.*

Produced by Goldstein

During the Settlor's lifetime only one signature of either Trustee shall be necessary on any act to be done.

1. Upon the Settlor's death, the Settlor appoints the Settlor's son, DANA P. BRIGHAM, as the Successor Trustee of the MARION W. BRIGHAM TRUST. If for any reason DANA P. BRIGHAM dies, or fails to qualify or ceases to act as the Successor Trustee, then TOBY P. BRIGHAM shall be the Second Successor Trustee.

2. Upon the Settlor's death, the Settlor appoints the Settlor's son, EDWARD M. P. BRIGHAM, as the Trustee of the EDWARD M. P. BRIGHAM TRUST. If for any reason EDWARD M. P. BRIGHAM does not serve as Trustee, dies, or fails to qualify or ceases to act as Trustee, then the Settlor appoints her son, DANA P. BRIGHAM, as the Successor Trustee.

3. Upon the Settlor's death, the Settlor appoints the Settlor's son, DANA P. BRIGHAM, as the Trustee of the JERRE BRIGHAM FORBES TRUST. If for any reason DANA P. BRIGHAM does not serve as Trustee, dies, or fails to qualify or ceases to act as Trustee, then the Settlor appoints her son, TOBY P. BRIGHAM, as the Successor Trustee.

4. Upon the Settlor's death, the Settlor appoints the Settlor's son, TOBY P. BRIGHAM, as the Trustee of the TOBY P. BRIGHAM TRUST. If for any reason TOBY P. BRIGHAM does not serve as Trustee, dies, or fails to qualify or ceases to act as Trustee, then the income beneficiaries of this trust shall appoint a Successor Trustee.

5. Upon the Settlor's death, the Settlor appoints the Settlor's son, DANA P. BRIGHAM, as the Trustee of the DANA P. BRIGHAM TRUST. If for any reason DANA P. BRIGHAM does not serve as Trustee, dies, or fails to qualify or ceases to act as Trustee, then PATRICIA BRIGHAM shall be the Successor Trustee.

6. No Trustee will be entitled to compensation, but they shall be entitled to reimbursement for reasonable expenses.

B. The Settlor will appoint the Personal Representative of the Settlor's Estate in reliance upon Settlor's faith in the ability and integrity of the party appointed. For this reason, a Trustee

Page 18 of Amended Marion W. Brigham Revocable Trust M.W.B.

Produced by Goldstein

named in this instrument that does not serve as Personal Representative of the Settlor's Estate is relieved of all duties which he otherwise might have to examine into and satisfy himself as to the accounts of the Personal Representative in the administration of Settlor's Estate. The Trustee is authorized to accept the assets that are distributed to him by the Personal Representative of the Settlor's Estate as being in full satisfaction of all gifts given to him by the Settlor's Will. For the same reason, any Trustee that succeeds a Trustee named in this instrument is relieved of all duties he otherwise might have to examine into and satisfy himself as to the accounts of the Predecessor Trustees. The Successor Trustee is authorized to accept the assets delivered to him by the Predecessor Trustee as constituting the entire Trust Estate.

C.   Each Successor Trustee shall accept the office in writing and shall be vested with the powers and duties of the trusteeship immediately upon delivery of the written acceptance to any other Trustee, and if there is none, to one or more of the beneficiaries of the Trust, without the necessity of any other act, conveyance, or transfer.

D.   During the Settlor's life, any Trustee serving under this Trust may resign as Trustee by delivering to Settlor a written resignation signed by the resigning Trustee. After the Settlor's death, any Trustee may resign by delivering to any other Trustee, or, if none, to the beneficiaries, a written resignation signed by the resigning Trustee, said resignation to be effective thirty (30) days after delivery. In case of the resignation, refusal or inability to act of any Trustee, the Settlor, if living, otherwise the resigning Trustee may appoint a Successor Trustee.

Every Successor Trustee shall have all the powers given to the originally named Trustee. No Successor Trustee shall be personally liable for any act or omission of any Predecessor Trustee. With the approval of the Settlor if living, otherwise of the beneficiaries or a majority in interest of the beneficiaries then entitled to receive or have the benefit of the income from

Page 19 of Amended Marion W. Brigham Revocable Trust *M.W.B.*

the Trust, a Successor Trustee may accept the accounting rendered and the property received as a full and complete discharge to the Predecessor Trustee without incurring any liability for so doing.

The parent, guardian or conservator of a beneficiary under disability shall receive notice and have authority to act for such beneficiary under this section.

No Trustee wherever acting shall be required to give bond or surety or be appointed by or account for the administration of any Trust to any court.

E.   The Settlor waives compliance with any law requiring qualification of Trustee or registration of Trusts, or administration or accounting by Trustee under the supervision of any court.   Instead, Trustee shall furnish not less frequently than annually an accounting to each Trust beneficiary who is entitled to receive current distributions of income whether or not distributed, and whether or not the distribution is discretionary. The accounting shall be only for the Trust in which the person receiving the accounting is interested. Any person entitled to receive an accounting, or a person legally entitled to act for him, shall state in writing his objections to an accounting and deliver the objections to the Trustee within six (6) months after receipt of a copy of the accounting.   Failure to object in this manner shall constitute a waiver of objections.   The waiver shall be binding as to all matters stated in the accounting, or as shown by it, upon all persons claiming under the waiving beneficiary, whether or not in being, who are then or thereafter may become eligible to share in either the principal or the income of the Trust for which the accounting is made.

F.   No purchaser or other person dealing with any Trustee or Trustees purporting to act under any power or authority granted in, or given by any Trustee in purported compliance with, this Article or any part or parts of it need be concerned to inquire into the existence of facts upon which the purported power or authority depends or into the question whether the purported power or authority still exists.

Page 20 of Amended Marion W. Brigham Revocable Trust MWB.B.

G.   Trustee shall not be liable for damage or loss caused by honest errors of judgment made by him or his agents or employees, or by any good faith exercise of the discretion given to him.

H.   No bond or surety shall be required of any Trustee serving under this Trust.

## ARTICLE XII
### TRUSTEE'S POWERS AND DIRECTIONS

The Settlor hereby grants to the Trustees of the trusts established hereunder including any Successor Trustee the continuing, absolute, discretionary power to deal with any property, real or personal, held in the Settlor's trust, as freely as the Settlor might in the handling of her own affairs.

Trustee, and their successors and parties serving in their stead, shall be governed by the provisions of Florida law that are not in conflict with this instrument, and shall have all additional powers and protection granted by statute to Trustees at the time of application that are not in conflict with this instrument. In addition and not in limitation of any common-law or statutory authority, and without application to any court, they and their successors and parties serving in their stead also shall have the powers and responsibilities described below, to be exercised in their absolute discretion until distribution of the trusts created under this instrument, and shall observe the instructions hereafter given.

A.   With regard to both real and personal property, for the purpose of obtaining funds for payment of taxes, claims and the costs of administration of Settlor's probate estate if authorized, and for making distributions, conversion into cash, management of the property and for every other proper purpose, he may acquire, retain, invest, reinvest, exchange, sell, lease, borrow, mortgage, pledge, transfer and convey in such manner and on such terms without limit as from time to time as he may deem advisable, even for terms beyond the expected term of any trust, and no purchaser or lender shall be liable to see to the propriety of the transaction nor to the application of the proceeds.

Page 21 of Amended Marion W. Brigham Revocable Trust

B. To invest and reinvest in such stocks, bonds, and other securities and property, real or personal, as my Trustees may deem advisable including without limitation, unsecured obligations, undivided interests, interests in investment trusts, common trust funds, money market accounts, mutual funds, leases of property, real or personal, which may be outside of the Settlor's domicile.

C. Trustee shall charge against income a reasonable allowance for depreciation on property held for the production of income and subject to depreciation under generally accepted accounting principles.

D. To charge or credit to principal any premiums and accounts on interest-bearing securities purchased at more or less than par.

E. To pay expenses that are reasonable in the judgment of Trustee for the delivery of gifts made under this instrument.

F. To pay any pledge to a charity made by Settlor in writing if, in the judgment of Trustee, Settlor would want the pledge paid.

G. To hold, manage, invest and account for the separate trusts in one or more consolidated funds, in whole or in part as Trustee may determine. The division into the several shares comprising each consolidated fund need be made only on Trustee's books of account, in which each trust shall be allotted its proportionate part of the principal and income of the fund and charged with its proportionate part of the expenses of the fund. No such holding, however, shall defer the vesting in possession of any estate created under this instrument.

H. Notwithstanding that distribution of the Trust Estate may be of shares in certain Trust assets, and distributions from the Trusts created in this instrument are of shares in certain assets of the Trusts, those shares need not be satisfied by distribution of undivided shares in those assets. Instead, the value of a share to be distributed and any pecuniary gift may be partially or wholly satisfied in cash or in kind or by both, and distributions in kind may be of entire properties or undivided shares provided, however, that distributions shall fairly reflect

Page 22 of Amended Marion W. Brigham Revocable Trust $\mathcal{M.W.B.}$

at the date of each distribution the net appreciation or depreciation in value of all of the assets then available for satisfaction of the gift or distribution.

I.   With regard to all policies of insurance which are payable to any Trustee named in this instrument, Trustee may:

1.   Execute and deliver receipts and other instruments and take such action as may be appropriate to obtain possession and control of the policies.

2.   Execute and file proofs of claim required to collect the proceeds of insurance policies, and the receipt of Trustee shall constitute full acquittance to insurance companies for all proceeds so paid provided, however, that Trustee shall be under no obligation to institute legal proceedings for the collection of proceeds of any policy until and unless he has been indemnified to his satisfaction for all costs and expenses, including attorneys' fees.

J.   To purchase assets of Settlor's probate estate that are proper investments for the Trust Estate, the price of purchases to be not more than fair market value determined by Trustee.

K.   When any act or course of conduct is subject to a contingency under the terms of this instrument, Trustee may act or continue a course of conduct as if the contingency has not occurred until he receives actual notice of the event controlling the contingency.   This shall not relieve a person receiving an otherwise improper distribution from liability for return of the distribution nor affect the duty of Trustee to recover the distribution if in his judgment he should do so.

L.   To pay all or any portion of Trustee's compensation or expenses out of income or principal and to accumulate income for this purpose.   Unless otherwise provided by this instrument, the amounts paid from income shall be charged against income, and these payments shall require no reimbursements or adjustment of the accounts of the trust or the shares that the beneficiaries shall be entitled to receive in income or principal.

Page 23 of Amended Marion W. Brigham Revocable Trust *m.w.B.*

M.   In determining what is net income for all purposes related to payment to or use, expenditure or application for the beneficiaries under a trust, to set aside and keep on hand whatever reserves he shall deem wise for a fiscal year of the Trust for expenses during that and the succeeding fiscal year, and to provide for fluctuations in gross income within a fiscal year. This determination shall be final and binding upon all persons.

N.   Trustee is authorized to hold underproductive assets that are contributed to the Trust or are part of Settlor's Estate, and to pay the cost of carrying that property from income.   No distributions are to be made in lieu of income from that property, no income is to be charged against the proceeds of that property, and all net proceeds are to be treated as principal.

O.   Until Trustee has received written notice of any birth, marriage, death or other event upon which any right to distribution of income or principal of a trust may depend, Trustee shall incur no liability for the distributions made in good faith to persons whose interests may be affected by that event.   In disposing of any trust property subject to a power to appoint by will of a beneficiary, Trustee may rely upon an instrument admitted to probate in any jurisdiction as the last will of such beneficiary, but if Trustee has no written notice of the existence of such a will within a period of three (3) months after the death of such beneficiary, it may be presumed such beneficiary died intestate and Trustee shall be protected in acting in accordance with such presumption.

P.   If in the judgment of Trustee the value of the principal held in any trust is Fifty Thousand Dollars ($50,000.00) or less, Trustee, in Trustee's discretion, is authorized to terminate the Trust and to distribute to each beneficiary his share of the assets of the trust. A distribution to a beneficiary who is a minor shall be subject to the provisions of the TRUST FOR BENEFICIARIES hereinabove described.

Q.   In expending funds for the benefit of a beneficiary, Trustee is authorized in his discretion to make payments in any

Page 24 of Amended Marion W. Brigham Revocable Trust m . W . B .

Produced by Goldstein

one or more of the following ways:   (a) directly to the beneficiary; (b) to the natural, legal or testamentary guardian or conservator of the beneficiary; or (c) by expending the same directly or indirectly for the purposes specified in this instrument.  After making payments directly to the beneficiary or to a guardian, Trustee shall not be obligated to see to what use such funds are put and any such payments shall be a complete discharge of Trustee to the extent of the amount so paid without any further receipt.

R.   The Trustee shall maintain the Settlor in a personal residence or acquire such a residence for the use of the Settlor. It is the Settlor's intention that the Co-Trustee or Successor Trustee shall maintain the Settlor in the last residence of the Settlor or in a suitable residence in the discretion of the Co-Trustee or Successor Trustee.  If all of the Co-Trustees or Successor Trustee decide that same is in the best interest of the Settlor to be moved to another location, the residence or facility must have the same standards of living as the present residence of the Settlor.

S.   The Trustee is authorized to buy, sell and trade in securities of any nature, including short sales, or on margin, and for such purpose may maintain and operate margin accounts with brokers, and may pledge any securities held or purchased by them with such brokers as security for loans and advances made to the trustee.

T.   To pay the premiums, elect optional modes of settlement and exercise all other rights of ownership of policies of insurance that are included in the assets of any trust.

U.   To vote in person or by proxy any stocks or securities held and to grant proxies and powers of attorneys to such person or persons as the Trustee may deem proper; to consent to or participate in any plan for the liquidation, reorganization, consolidation or merger of any corporation, or any security which is held; to sell or exercise any (rights) issued on any security held in any Trust Fund hereunder; to register and carry any

Page 25 of Amended Marion W. Brigham Revocable Trust )m W. B.

Produced by Goldstein

property in the name of the Trustee or in the name of a nominee or to hold it unregistered, but without thereby increasing or decreasing the liability as Fiduciary.

V.   To borrow money for the use of any Trust hereunder in any instance where the Trustee may deem it necessary and proper, and to secure the same by mortgage, Trust deed, pledge or other form of security to or upon any part of the Trust corpus.

W.   To lease any real estate for such term or terms and upon such conditions and rentals and in such manner as the Trustee may deem advisable (with or without privilege of purchase), and any lease so made shall be valid and binding for the full term thereof even though same shall extend beyond the duration of the administration of a trust; to make repairs, replacements and improvements, structural or otherwise, to any such real estate, to insure such property against fire or other risk, and to charge the expense thereof to principal or income (or apportion the same between principal and income) as the Trustee may deem proper.

X.   To compromise, adjust and settle disputes, claims and estate and income tax liabilities, and to agree to any revision or modification of any contract in force at the time of Settlor's death, and to execute all documents and agreements in connection therewith.

Y.   If a generation-skipping transfer tax is paid under Section 2601 of the Internal Revenue Code upon a distribution from a trust, Trustee is authorized to pay from the principal of that trust any increase in the tax that is caused by the death of the deemed transferor of the distribution within three (3) years after the distribution.

Z.   If at the time of the Settlor's death the trust estate consists of interests in real property, including but not limited to fee ownership, leasehold interests, beneficial interests in trusts, and other forms of ownership, then the trustee is given broad authority in his sole discretion to deal with and manage these interests without regard to "traditional" fiduciary portfolio diversification and management requirements.   It is Settlor's

Page 26 of Amended Marion W. Brigham Revocable Trust

preferences, but not a requirement that these interests be managed and retained as a part of the trust estate for as long as it is practical and in the best interest of the trust estate.

AA. To exercise the election to take either income tax deductions or estate tax deductions, whenever the law permits such an election, in such manner as in the judgement of Trustee will minimize the total tax liability of the trust estates. There shall be no reimbursement or adjustment of the accounts of the trusts, either as to the principal or income or otherwise, or of the shares of beneficiaries in income or principal, by reason of the exercise of that election by the Trustee. To exercise the election to use the alternate valuation date for estate tax purposes in such manner as in the judgment of Trustee will be for the benefit of the beneficiaries of the trust.

BB. To retain any security or other property owned by Settlor at the time of Settlor's death, so long as such retention appears advisable, and to exchange any such security or property for other securities or properties and to retain such items received in exchange. The Trustee shall have full and unlimited power and discretion and shall not be limited to such investments and reinvestments as the Trustees are by law authorized to make, but the Trustee shall have full power and authority to make and retain any other investments or property, with the transfer herewith or subsequently acquired or transferred, which the Trustee may deem desirable and for the best interests of the trust. Trustee may presume that Settlor had confidence in the securities owned by Settlor at the time of the Settlor's death, and therefore no sale thereof shall be solely in order to diversify investments.

CC. To open bank accounts with the right in anyone or more of the Trustees to withdraw therefrom or write checks thereon.

DD. To continue any unincorporated business or venture, or an incorporated one, in which the Settlor was engaged throughout the period of administration of any trust created under this instrument. To incorporate any business or venture in which the

Page 27 of Amended Marion W. Brigham Revocable Trust M.W.B.

Settlor may be engaged at the time of his death and to likewise continue that incorporated business indefinitely.

EE. The Trustee shall exercise all of the powers provided above in this Article based on the past actions and investments of the Settlor during her lifetime.

FF. If, at the time of the Settlor's death, the Settlor is a stockholder in any corporation, the Settlor hereby authorizes and empowers the Trustee in his discretion, to continue the interest in such business only if a stockholder's agreement has been entered into and executed during the Settlor's lifetime. The Trustee is hereby authorized and directed to follow the terms of said stockholder's agreement and is hereby authorized to carry out the terms of said stockholder's agreement and is further hereby authorized to make any waivers, modifications or other alterations of said stockholder's agreement as the Trustee may deem advisable.

## ARTICLE XIII

### DEFINITIONS

A. Except as defined in Article II, wherever used in this instrument, the words "child," "children," "descendants," "heirs" and "issue" are intended to include not only persons who are children, descendants, or heirs by blood, but also persons who are children, descendants, or heirs by adoption, prior to attaining their 18th birthday and their descendants and heirs. These terms shall not include stepchildren who have not been adopted according to law, but shall include any children born to the Settlor after the date of the execution of this Trust Agreement.

B. Wherever in this instrument the context and facts permit, masculine, feminine, and neuter pronouns and the word "Trustee," whether singular or plural, shall include the singular and plural and all genders and future fiduciaries as well as those named in this instrument.

C. The headings of the Articles hereof are inserted solely for the convenience of reference and shall have no further meaning, force or effect.

Page 28 of Amended Marion W. Brigham Revocable Trust *M. W. B.*

D.   The application by Trustee of the definitions set forth above shall be conclusive upon all persons if made in good faith.

## ARTICLE XIV

### SEVERABILITY

Should any provision, term, or condition of this Trust Agreement be held to be illegal, invalid, or void, for any reason whatsoever, by any court of competent jurisdiction, and such declaration shall be finally upheld on any and all appeals and petitions taken therefrom this Trust Agreement (including any future amendments hereto) shall be read as if such illegal, invalid, or void provisions were not a part hereof, and the remainder of this Trust Agreement shall remain in full force and effect.

## ARTICLE XV

### EXECUTION OF DUPLICATES

This Trust Agreement has been executed with duplicates, each of which shall be deemed an original.   Such duplicates shall together constitute one and the same instrument, any of which shall prove the Trust Agreement between the parties hereto without reference to, proof or presentation of the other duplicates.

## ARTICLE XVI

### TRUSTEE'S CERTIFICATE

A certificate signed by any Trustee under this instrument and acknowledged by him before a notary public shall be conclusive evidence upon all persons and for all purposes of the facts stated in the certificate respecting the terms of this instrument and the identity of the Trustee who from time to time are serving under it.

## ARTICLE XVII

### FLORIDA LAW CLAUSE

All questions concerning the meaning and intention of the terms of this instrument and concerning its validity and all questions relating to performance under it shall be judged and resolved in accordance with the laws of the State of Florida.

IN WITNESS WHEREOF, MARION W. BRIGHAM, has signed her instrument as Settlor and as Co-Trustee, and DANA P. BRIGHAM, as

Page 29 of Amended Marion W. Brigham Revocable Trust *M. W. B.*

Co-Trustee, have caused this instrument to be signed as evidence
of their acceptance of the Trust.

Signed, sealed and delivered
in the presence of:

_____
WITNESS

_____
WITNESS

_____
WITNESS

_____
WITNESS

_____
WITNESS

_____
WITNESS

_____
MARION W. BRIGHAM, SETTLOR

_____
MARION W. BRIGHAM, CO-TRUSTEE

_____
DANA P. BRIGHAM, CO-TRUSTEE

Page 30 of Amended Marion W. Brigham Revocable Trust

STATE OF FLORIDA    )
                    ) SS.
COUNTY OF DADE      )

WE, MARION W. BRIGHAM, _Larry A. Cusack_____, and
_Wayne Pathman_____, the Settlor, Co-Trustee
and the Witnesses respectively, whose names are signed to the
attached or foregoing instrument, having been sworn, declared to
the undersigned officer that the Settlor and Trustee signed the
instrument as her Revocable Trust, that she signed, and that each
of the Witnesses, in the presence of the Settlor and Trustee and
in the presence of each other, signed the Trust as a Witnesses.

                            _Marion W. Brigham_____
                            MARION W. BRIGHAM,
                            SETTLOR

                            _Marion W. Brigham_____
                            MARION W. BRIGHAM,
                            CO-TRUSTEE

                            _Larry A. Cusack_____
                            WITNESS

                            _____
                            WITNESS


    SUBSCRIBED and SWORN TO before me by MARION W. BRIGHAM, the
Settlor and Co-Trustee, and _Larry A. Cusack___ and
_Wayne Pathman_, the Witnesses on _July 13_____, 1990.

                            _A. Ryan_____
                            NOTARY PUBLIC, STATE OF FLORIDA
                            AT LARGE

My Commission Expires:

                    NOTARY PUBLIC STATE OF FLORIDA
                    MY COMMISSION EXP. NOV.15,1991
                    BONDED THRU GENERAL INS. UND.


Page 31 of Amended Marion W. Brigham Revocable Trust _M.W.B._

Produced by Goldstein

STATE OF FLORIDA      )
                      ) SS:
COUNTY OF DADE        )

WE, DANA P. BRIGHAM, _Larry A. Cusack_____, and _Wayne Pathman_____, the Co-Trustee, and the Witnesses respectively, whose names are signed to the attached or foregoing instrument, having been sworn, declared to the undersigned officer that he signed the Amended Revocable Trust of MARION W. BRIGHAM, and that each of the Witnesses, in the presence of the Successor Trustee and in the presence of each other, signed the Trust as Witnesses.

_____
DANA P. BRIGHAM,
CO-TRUSTEE

_____
WITNESS

_____
WITNESS

SUBSCRIBED and SWORN TO before me by DANA P. BRIGHAM, the Co-Trustee, and _Larry A. Cusack_____ and _Wayne Pathman_____, the Witnesses on the 13th day of _July_____, 1990.

_____
NOTARY PUBLIC, STATE OF FLORIDA
AT LARGE

My Commission Expires:

NOTARY PUBLIC STATE OF FLORIDA
MY COMMISSION EXP. NOV.15,1991
BONDED THRU GENERAL INS. UND.

Page 32 of Amended Marion W. Brigham Revocable Trust

Produced by Goldstein

000825

EXHIBIT "A"

TO THE AMENDED MARION W. BRIGHAM REVOCABLE TRUST NUMBER ONE

The Co-Trustees, MARION W. BRIGHAM of the AMENDED MARION W. BRIGHAM REVOCABLE TRUST NUMBER ONE, acknowledges that she holds the following items under the terms of the foregoing Trust Agreement dated _July 13_____, 1990.


CASH                    $100.00




_Marion W. Brigham_____
MARION W. BRIGHAM,
CO-TRUSTEE

_[signature]_____
DANA P. BRIGHAM,
CO-TRUSTEE

APPROVED:

_Marion W. Brigham_____
MARION W. BRIGHAM
SETTLOR


c:\wp\trusts\brigham.mar



Page 33 of Amended Marion W. Brigham Revocable Trust _M.W.B._

Produced by Goldstein

## SCHEDULE "A"

1) **PERSONAL RESIDENCE, MIAMI, FLORIDA** (Townhouse)

   14842 Breckness Place
   Miami Lakes, Florida 33016

2) **PERSONAL RESIDENCE, NORTH CAROLINA**

   Land and buildings located on Aylers Creek Road, Crabtree Township, Yancey County, North Carolina. (See also Pages 15-25 (Parcel I) of Appraisal of Brigham Tree Farm Properties, Yancey County, North Caorlina, and Pages 24-25 for a listing of the land, land improvements and building improvements.)

3) **MEADOWOOD LAKES (Raw Land)**

   Block 10, Lot 1, Subdivision Plat Book 58, Pages 26-27, Meadowood Lakes, Westwood Section, Phase A, Polk County

4) **SKULL CREEK:** (Colorado)

   Mortgage on 80 acres Moffat County School District No. 1. Note dated March 15, 1982; face amount $10,858.08 at 12%, due March 15, 1990.

5) **HOUNDS EARS, NORTH CAROLINA:** (Tarlton)

   Mortgage in original amount of $54,000, January 2, 1981, 154 payments of $350.00 monthly and one payment $100.00.

6) **RICE ROAD, NORTH CAROLINA** (Raw Land)

   50% interest in property located in Crabtree Township, Yancey County, North Carolina. (See also Pages 35-37, Parcel V, of appraisal of Brigham Tree Farm Properties, Yancey County, North Carolina, reflecting 64.9 acres, more or less, and 100% interest; however, survey and tax bill reflect 53.9 acres and there is only 50% interest, owned as a tenant in common with Stewards.)

7) **WEBB (GRINDSTAFF ROAD), NORTH CAROLINA** (Raw Land)

   Located in South Toe Township, Yancey County, North Carolina. (See also Pages 26-28, Parcel II, of appraisal of Brigham Tree Farm Properties, Yancey County, North Carolina, reflecting 4 acres.)

8) **HALLS CHAPEL ROAD, NORTH CAROLINA** (Raw Land)

   Located in South Toe Township, Yancey County, North Carolina. (See also Pages 29-31, Parcel III, and Pages 32-34, Parcel IV, of appraisal of Brigham Tree Farm Properties, Yancey County, North Carolina, reflecting 33.69 acres and 16.13 acres, respectively.)

9) **HUSKINS, BLUE ROCK, NORTH CAROLINA** (Raw Land)

   Located in Crabtree Township, Yancey County, North Carolina. (See also Pages 38-40, Parcel VI, of appraisal of Brigham Tree Farm Properties, Yancey County, North Carolina, reflecting 26 acres.

10) **COXES CREEK, NORTH CAROLINA** (Raw Land)

   Located in Ramseytown Township, Yancey County, North Carolina. (See also Pages 38-40, Parcel VI, of appraisal of Brigham Tree Farm Properties, Yancey County, North Carolina, reflecting 46.7 acres.)

   *M.W.B.*

11) SEVEN MILE RIDGE, NORTH CAROLINA (Raw Land)

Located in South Toe Township, Yancey County, North Carolina. (See also Pages 44-46, Parcel VIII, of appraisal of Brigham Tree Farm Properties, Yancey County, North Carolina.)

12) LOTS 1, 2, 34, 40, 48 AND 49, PALO ALTO KEYS, FLORIDA (Raw Land)

Key Largo, Florida, one-half interest with Pilafian.

13) MOFFAT COUNTY, COLORADO (Raw Land)

One-third interest in Township 4 North, Range 101 West, of the 6th P.M., Section 27:SW 1/4 of the SW 1/4 and Section 28:SE 1/4 of the SE 1/4, County of Moffat, State of Colorado

One-third interest in Township 4 North, Range 101 West, of the 6th P.M.; NE 1/4 of the SE 1/4, County of Moffat, State of Colorado

14) ELK RIVER ESTATES, STEAMBOAT SPRINGS, COLORADO

Lot 20, Filing 3, Elk River Estates, Routt County, Colorado, held in name of 4400 Palmarito, Inc.

2

*M. W. B.*

Produced by Goldstein

BRIGHAM & BRIGHAM, P. A.
LAWYERS
SUITE 106
4745 NORTHWEST 157TH STREET
MIAMI, FLORIDA 33014

E. F. P. BRIGHAM (1901-1982)
DANA P. BRIGHAM

TELEPHONE (305) 623-0138
FACSIMILE (305) 621-3625

April 22, 1991

Steven I. Goldstein, Esq.
Patla, Straus, Robinson & Moore, P.A.
Suite 300
29 North Market
P O Box 7625
Asheville, North Carolina 28802

Dear Mr. Goldstein:

It was a pleasure to speak with you again this morning.

Enclosed please find a copy of the current Trust document.

After you have had an opportunity to review it, please advise.

Sincerely,

DANA P. BRIGHAM

DPB/pmb
Enclosure

copy of 7/90 Trust Agmt.



Produced by Goldstein

000289

EXHIBIT "B"

Patla, Straus, Robinson & Moore, P.A.
P.O. Box 7625
Asheville, North Carolina  28802
Fed. Id. No. 56-0989857

D. Brigham

Page: 1
07/10/91
ACCOUNT NO: 18970-00A
STATEMENT NO: 1

04/22/91
SIG Telephone conference with client

05/08/91
RAF Review of Trust Agreement and discuss with SIG

05/13/91
RAF Telephone conference with client re Trust



05/14/91
RAF Telephone conference with client re Trust

05/15/91
RAF Review of file re estate planning

05/17/91
SIG Conference with client
RAF Conference with client and SIG re estate planning

05/22/91
SIG Preparation of letter

05/28/91
SIG Review and revision of letter

05/31/91
SIG Review and revision of letter

06/01/91
SIG Review and revision of letter                                    n/c

06/04/91
RAF Review of correspondence re tax planning                         n/c

Produced by Defendants
10002



PLAINTIFF'S
EXHIBIT
54

**EXHIBIT "C"**

```
                                                       Page: 2
               D. Brigham                             07/10/91
                                            ACCOUNT NO: 18970-00A
                                                STATEMENT NO: 1
```

```
06/19/91
      SIG Preparation of letter

06/27/91
      SIG Telephone conference with client              n/c

06/28/91
      SIG Telephone conference with client

         Total for Services Rendered                 546.25

05/01/91 Long Distance telephone calls for April       4.68
06/30/91 Long Distance telephone calls for May          1.25
                                                       ----
         TOTAL ADVANCES                                  5.93

         TOTAL CURRENT WORK                           552.18

         Balance                                     $552.18
                                                     ======
```

Disbursements made in connection with the matters described
above not included in this statement will be billed later.
Please indicate account number on check.

Produced by Defendants
10003

LAND TRUST AGREEMENT FOR THE

EFP BRIGHAM

LAND TRUST NO. 1



EXHIBIT
D-Trial
#28

Produced by Goldstein

000269

**EXHIBIT "D"**

LAND TRUST AGREEMENT FOR THE
EFP BRIGHAM TRUST NO. 1

THIS TRUST AGREEMENT, dated and effective the ___23ᵗʰ___ day of
___September___, 1991, entered into by and between DANA P.
BRIGHAM, as Trustee, hereinafter referred to as "Trustee", and
PATRICIA M. BRIGHAM, as Successor Trustee, hereinafter referred to
as "Successor Trustee", and the Beneficiary(ies) identified as such
on the signature page, hereinafter called the "Beneficiary(ies)".

W I T N E S S E T H:

WHEREAS, MARION BRIGHAM is about to convey or cause to be
conveyed to the Trustee, as Trustee under this Agreement the
property described in Exhibit A; and

WHEREAS, the Trustee is being engaged to contract for and in
the ordinary course of things to take title to the property
described in Exhibit A, hereinafter called the "property", attached
hereto and made a part hereof, as well as any additions hereto
which may occur from time to time.  Trustee also agrees to hold
title to such property, in trust, for the following uses and
purposes and subject to the following terms and conditions: and

WHEREAS, it is further the intent of the Trustee to take title
to the property in accordance with the provisions of Section
689.071, Florida Statutes and the applicable provisions of the
North Carolina General Statutes, as amended from time to time; and

WHEREAS, the Trust created by this instrument shall be known
for all purposes as the EFP Brigham Land Trust Number 1.

NOW, THEREFORE, it is hereby agreed as follows:

1.   PROPERTY

Title to the Property shall be conveyed to the Trustee in
accordance with and the rights of the parties shall be governed, to
the extent applicable, by the provisions of Section 689.071,
Florida Statutes, and the applicable provisions of the North
Carolina General Statutes, as amended from time to time.  The
Trustee agrees to accept the deed to the Property and to cause said
deed to be recorded in the Public Records of Yancey County, North

1

000270

Carolina, and to hold title to the Property for the uses and purposes herein stated. The Beneficiary shall advance to the Trustee all monies required by the Trustee to record said deed including, but not limited to, all appropriate documentary stamp taxes. The Beneficiary may not dedicate or cause any other property to be conveyed to the Trustee under this Trust Agreement unless the Trustee consents thereto in writing. Should other property subsequently be conveyed to and held by the Trustee pursuant to this Trust Agreement, the term "Property" as used herein shall mean and refer to all property, the title to which is held by the Trustee pursuant to this Trust Agreement. This Trust Agreement is identified as the EFP Brigham Land Trust Agreement No. 1 dated the _28th_ day of _September_, 1991.

2.   INTEREST OF BENEFICIARY(IES)

The Beneficiary(ies) shall be entitled to all of the earnings, avails and proceeds of the Trust property according to the percentage interests set forth next to their name on the signature page.

3.   INTERESTS OF BENEFICIARY(IES) ARE PERSONALTY

The interest of the Beneficiary(ies) shall consist solely of the following rights respecting the Trust property:

a.   The right to direct the Trustee to convey or otherwise deal with the title to the Trust property as hereafter set out.

b.   The right to provide direction to the Trustee as to the management and control of the Trust property.

c.   The right to receive the proceeds and avails from the rental, sale, mortgage or other disposition of the Trust property.

The foregoing rights shall be deemed to be personal property and may be assigned and/or otherwise transferred as such. The Beneficiary(ies) shall not have any legal or equitable right, title or interest, as realty, in or to any real estate which may be held in Trust under this Agreement, or the right to require partition of such real estate, but shall have only the rights, as personalty, set out above. The death of an individual (as opposed

2

Produced by Goldstein

to a corporation or trust) Beneficiary(ies) hereunder shall not terminate this Trust or in any manner affect the powers of the Trustee. The interest herein of such deceased Beneficiary(ies) shall pass to his personal representative, executor or administrator and not to his heirs at law. The interest of a Beneficiary(ies) may be assigned or transferred only if the consent of persons holding in excess of fifty percent (50%) of all such interests is first obtained and the provisions of Paragraph 18 hereof are adhered to.

4.   DUTIES OF Trustee

The Trustee assumes and agrees to perform the following active and affirmative duties:

a.   To execute instruments. When and as directed to do so by the Beneficiary(ies) of this Trust, the Trustee shall execute such instruments as shall be necessary to protect and conserve the Trust property; to sell, contract to sell and grant options to purchase said property and any right, title for interest therein on any terms; to exchange said property or any part or parts thereof for any other real or personal property upon any terms; to convey said property by deed or other conveyance to any grantee, with or without consideration; to mortgage, execute principal and/or interest notes, pledge or otherwise encumber said property or any part thereof, provided that any and all such deeds, mortgages, and notes and/or other documents shall contain provisions satisfactory to the Trustee exempting, exonerating and relieving the Trustee under this Trust from all personal obligation and liability whatsoever by reason of the execution thereof and from any and all personal obligation or liability for the repayment of the borrowed money evidenced and secured thereby; to lease, contract to lease, grant options, to lease and renew, extend, amend or otherwise modify leases on said property or any part thereof from time to time, for any period of time, for any rental and upon any other terms and conditions; and to release, convey or assign any other right, title or interest whatsoever in, to or about said property or any part thereof.

3

b. To sell Trust property and distribute proceeds. If any property shall remain in this Trust thirty (30) years from the date hereof, the Trustee shall forthwith take whichever of the following actions he deems appropriate:

(1) sell the same at public sale after a reasonable public advertisement and reasonable notice thereof to the Beneficiary(ies). After deducting his reasonable fees and expenses, he shall distribute the proceeds of the sale to the Beneficiary(ies) or if other beneficiaries have been added, the proceeds of the sale shall be distributed as their interests may then appear without any direction or consent whatsoever; or

(2) transfer, set over, convey and deliver to all of the then beneficiaries of this Trust their respective undivided interests in any non-divisible assets; or

(3) transfer, set over and deliver all of the assets of said Trust to the beneficiaries thereof in their respective proportionate interests at any time that the assets of said Trust consist solely of cash.

c. To furnish information concerning taxes and assessments. The Trustee shall, on or before November 15th of each year, determine the amount of all taxes and assessments for public improvements that may be levied upon or against the Trust property and advise each Beneficiary(ies) of the amount due thereof and the Beneficiary(ies) will pay the same to the Trustee within thirty (30) days after notice.

d. To file ad valorem tax returns. The Trustee shall file all yearly ad valorem tax returns covering any real property held in trust hereunder as and when required by any county, municipality or other governing body.

e. To keep records of Trust. The Trustee shall keep and render full and correct accounts with respect to the administration of the trust.

f. To prepare fiduciary reports. The Trustee shall prepare data for all fiduciary reports and submit it annually to the Beneficiary(ies) of the Trust.

4

Produced by Goldstein

g.  To submit terminal accounting.  The Trustee is to prepare and submit a final report to the Beneficiary(ies) on termination of the trust.

h.  To inform about zoning and rezoning.  Upon request by the beneficiary(ies), the Trustee is to advise the Beneficiary(ies) concerning the zoning of the property or any rezoning thereof.

i.  To advise as to violation of ordinances.  The Trustee shall advise the Beneficiary(ies) of any violation of state statutes or any ordinance affecting the land or building involved in said Trust as may come to the attention of the Trustee.

j.  To provide insurance on Trust property.  The Trustee shall compel the Beneficiary(ies) of this Trust to furnish, pay for and keep in force in the name and for the benefit of the Trustee, such insurance (including, without limitation, workmen's compensation and public liability insurance) as the Trustee may at any time request, in such companies, in such amounts and against such risks and perils as may be specified by the Trustee.  If the Beneficiary(ies) shall fail, neglect or refuse so to do, the Trustee shall obtain such insurance, and the beneficiaries jointly and severally agree to reimburse the Trustee for the premiums thereon, permitting said Trustee, in his individual capacity, to file a lien against any and all property which is held by the Trustee subject to this trust agreement, until such premium payments have been reimbursed.

k.  The terms and conditions of that certain deed wherein Marion Brigham, as Grantor, and Dana P. Brigham, as Trustee, is the Grantee, for property legally described hereinafter, are hereby incorporated herein and shall control over any conflicting terms herein:

SEE ATTACHED EXHIBIT "A".

5.   OBJECTS AND PURPOSES OF TRUST

The objects and purposes of this Trust shall be to hold title to the Trust property and to protect and conserve it until its sale or other disposition or liquidation. The Trustee shall, except as otherwise stated herein, deal with the Trust property

5

Produced by Goldstein

only in accordance with the direction and consent of the Beneficiary(ies). Except as otherwise stated herein, the Trustee shall not manage or operate the Trust property nor undertake any other activity not strictly necessary to the attainment of the foregoing objects and purposes; nor shall the Trustee transact business of any kind with respect to the Trust property within the meaning of Chapter 609, of the Florida Statutes, or any other law or under any statute of the North Carolina General Statutes; nor shall this Agreement be deemed to be, or create or evidence the existence of a corporation, de facto or de jure, or a Massachusetts Trust, or any other type of business trust, or any association in the nature of a corporation, or a copartnership in the nature of a corporation, or a copartnership or joint venture by or between the Trustee and the Beneficiary(ies), or by or between the Beneficiary(ies).

6.    REGARDING THE BENEFICIARY(IES)

a.    Beneficiary(ies) dealing with the trust property. The Beneficiary(ies) in his own right shall in accordance herewith, have the right to direct as to Trust property and the exclusive right to control the selling, renting and other handling and disposition of it, except that the Trustee, as Agent of the Beneficiary(ies) may be authorized to collect and otherwise handle the rents and avails and the proceeds of any sale or other disposition of such property. The Beneficiaries shall have the duty respecting the payment of taxes, insurance premiums or other costs or charges against or concerning the Trust property as set forth herein.

b.    Beneficiary(ies) cannot bind Trustee or other Beneficiary(ies). No Beneficiary shall have the authority to contract for or in the name of the Trustee or any other Beneficiary or to bind the Trustee or any other Beneficiary personally.

c.    Forbidding use of name of Trustee for publicity. The name of the Trustee shall not be used by a Beneficiary(ies) in connection with any advertising or other publicity whatsoever without the prior written consent of the Trustee.

6

000275

d. Action of the Beneficiary(ies). Wherever herein the consent, approval, signature or other action or non-action of the Beneficiary(ies) shall be required, the consent, approval, signature or other action or non-action by persons (of whom the Trustee may be one) holding in excess of fifty percent (50%) of the interests of the Beneficiary(ies) shall be necessary to satisfy such requirements.

e. Default of Beneficiary(ies). Failure of a Beneficiary(ies) to pay to the Trustee any sum due for taxes, interest, mortgage or loan payments, legal fees, or any other costs or expenses relating to the Trust or the Trust property as well as all other amounts payable by the Beneficiary(ies) to the Trustee under this Agreement shall constitute a lien upon the interest of such Beneficiary(ies), and shall bear interest at the rate of twelve percent (12%) per annum until paid and such lien may be foreclosed as provided by law and the Beneficiary(ies) shall pay all expenses and legal fees for collection.

f. Protection of third parties dealing with Trustee. No party dealing with the Trustee in relation to the Trust property in any manner whatsoever, and (without limiting the foregoing) no party to whom the Trust property or any part of it or any interest in it shall be conveyed, contracted to be sold, leased or mortgaged by the Trustee, shall be obliged to (a) see to the application of any purchase money, rent or money borrowed or otherwise advanced on the property; (b) see that the terms of this Trust agreement have been complied with; (c) inquire into the authority, necessity or expediency of any act of the Trustee; or (d) be privileged to inquire into any of the terms of this Trust agreement. Every deed, mortgage, lease or other instrument executed by the Trustee in relation to the Trust property shall be conclusive evidence in favor of every person claiming any right, title or interest under the trust that (a) at the time of its delivery the Trust created under this Agreement was in full force and effect; (b) such instrument was executed in accordance with the terms and conditions of this Agreement and all its amendments, if any, and is binding

7

000276

upon all beneficiaries under it; (c) the Trustee was duly authorized and empowered to execute and deliver every such instrument; and that (d) if a conveyance has been made to a successor or successors in trust, such successor or successors have been appointed properly and are vested fully with all the title, estate, rights, powers, duties and obligations of its, his or their predecessor in trust.

7.  TRUST AGREEMENT NOT TO BE RECORDED

This Agreement shall not be placed on record in the county in which the Trust property is situated, or elsewhere, but if it is so recorded, such recording shall not be considered as notice of the rights of any person under this Agreement derogatory to the title or powers of the Trustee.

8.  Trustee NOT INDIVIDUALLY LIABLE

The Trustee shall not be required, in dealing with the Trust property or in otherwise acting under this Agreement, (a) to enter into any individual contract or other individual obligation whatsoever, nor (b) to make himself individually liable to pay or incur the payment of any damages, attorneys' fees, fines, penalties, forfeitures, costs, charges or other sums of money whatsoever. Furthermore, the Trustee shall have no individual liability or obligation whatsoever arising from his ownership, as Trustee, of the legal title to the trust property, or with respect to any act done or contract entered into or indebtedness incurred by him in dealing with the trust property, or in otherwise acting under this Agreement, except only so far as the Trust property and any Trust funds in the actual possession of the Trustee shall be applicable to the payment and discharge of such liability or obligation.

9.  REIMBURSEMENT AND INDEMNIFICATION OF Trustee

If the Trustee shall pay or incur any liability to pay any money on account of this Trust, or incur any liability to pay any money on account of being made a party to any litigation as a result of holding title to the Trust property or otherwise in connection with this Trust, whether because of breach of contract,

8

000277

injury to person or property, fines or penalties under any law, or otherwise, the Beneficiary(ies), jointly and severally, agrees that on demand he will pay to the Trustee, with interest at the rate of eighteen percent (18%) per annum, all such payments made or liabilities incurred by the Trustee, together with his expenses, including every and all attorneys' fees which he may incur in connection therewith, and that he will indemnify and hold the Trustee harmless of and from any and all payments made or liabilities incurred by him for any reason whatsoever as a result of this Agreement; and all such amounts so paid by the Trustee, as well as his compensation hereunder, shall constitute a lien on the Trust property.  The Trustee shall not be required to convey or otherwise deal with the Trust property so long as any money is due from the Beneficiary(ies) to the Trustee under this Agreement or otherwise; nor shall the Trustee be required to advance or pay out any money on account of this Trust or to prosecute or defend any legal proceedings involving this Trust or any property or interest under this Agreement unless he shall be furnished in advance with sufficient funds or be indemnified to his satisfaction.

10.  RESIGNATION OR DISCHARGE OF Trustee

The Trustee may resign at any time by sending a notice of his intention to do so by certified mail to the Beneficiary(ies) hereunder at the address(es) last known to the Trustee.   Such resignation shall become effective ten (10) days after the mailing of such notices.  Beneficiaries (of whom the Trustee may be one) owning more than fifty percent (50%) of the beneficial interest in the Trust property may discharge the Trustee at any time without reason, or without giving reason therefore.  In the event of such resignation or discharge, a successor or successors may be appointed by the person or persons (or such number of such persons as can reasonably be found) then entitled hereunder to direct the Trustee in the disposition of the Trust property, and the Trustee thereupon shall transfer, assign and convey the Trust property to such successor or successors in trust. If no successor in trust is so named within ten (10) days after the mailing of such notices, or

9

Produced by Goldstein                              000278

within ten (10) days of the discharge, then the Trustee may transfer, assign and convey the trust property to the Beneficiaries in accordance with their respective interests hereunder, or the Trustee may, at his option file a suit for appropriate relief in any court of competent jurisdiction. The Trustee, notwithstanding such resignation, or discharge, shall continue to have a lien on the Trust property for his costs, expenses and attorneys' fees and any other monies due from the Beneficiary(ies) to the Trustee whether under this Agreement or otherwise.

11.   AMENDMENT OF TRUST AGREEMENT

This Agreement contains the entire understanding between the parties with respect to the subject matter hereof, and may be amended, extended, revoked or terminated only by a written agreement signed by the Trustee and the Beneficiary(ies). Immediately upon any such termination of this Trust, all of the then undivided interests in any non-divisible assets or cash may be transferred, set over, conveyed and delivered to all the then beneficiaries as their interests may then appear.

12.   SUCCESSORS BOUND BY THIS AGREEMENT

The terms and conditions of this Agreement shall inure to the benefit of and be binding upon any Successor Trustee under it, as well as upon the executors, personal representatives, administrators, assigns and all other successors in interest of the Beneficiary(ies).

13.   FLORIDA LAW GOVERNS CONSTRUCTION

This Agreement is being executed in and shall be governed by and construed and enforced in accordance with the laws of the State of Florida.   The Trustee shall have the laws of North Carolina apply to the extent that he deems it necessary or advisable to effectuate the intent of this Agreement.   Any litigation arising hereunder shall, if the Trustee so elects, occur either in Dade County, Florida, or in Yancey County, North Carolina.

14.   CERTIFIED COPIES SATISFACTORY EVIDENCE

10

Copies of this Agreement or any amendment hereto, certified by the Trustee to be true and correct, shall be satisfactory evidence for all purposes.

15. DISPUTES AND CONTROVERSIES

Any dispute, controversy, or claim arising out of or relating to this Agreement shall be settled by arbitration held in either Miami, Florida, or in Asheville, North Carolina, as determined by the Trustee, in accordance with the Rules of the American Arbitration Association and judgment upon any award rendered in such proceedings may be entered in any court having jurisdiction as provided by law.

16. COMPENSATION OF Trustee

The Trustee shall be entitled to reasonable compensation for serving hereunder. The Trustee shall be entitled to pay (and be indemnified and reimbursed by the Beneficiary(ies) legal and/or accounting fees to any attorney at law and/or accountant (including a firm of which he or a member of his family is a member or an employee) hired by the Trustee to render any services hereunder, including fees for preparing this Agreement.

17. Trustee SHALL NOT FILE INCOME TAX RETURNS

The Trustee shall not be obligated to file any income tax returns with respect to this Trust, but the beneficiaries shall individually file all such returns and pay all taxes on the earnings and avails of the Trust property or growing out of their interest hereunder.

18. METHOD OF ASSIGNING INTEREST OF BENEFICIARY

Subject to Paragraph 2 hereof, the interest of a Beneficiary(ies), or any part thereof, may be transferred only by a written assignment thereof, executed in duplicate and delivered to the Trustee. The Trustee shall note his acceptance on the original and duplicate original of such assignment, retain the original thereof and deliver the duplicate original to the Assignee as and for his evidence of ownership of a beneficial interest hereunder. No Assignment of any interest hereunder (other than by operation of law) that is not so executed, delivered and accepted

11

shall be binding upon the Trustee, and any such assignment which is not so executed, delivered, and accepted shall be void as to all subsequent Assignees or purchasers with or without notice. No interest shall be transferred if the Beneficiary(ies) is in default of any provision hereunder.

19. EXCULPATORY CLAUSE

The Trustee shall not be liable for any negligent act or omission. The only liability of the Trustee and the only claim that may be asserted by any Beneficiary(ies) against the Trustee shall be for fraud, gross negligence, or willful misconduct.

20. GENDER

The use of any gender in this Agreement shall include all genders, and the use of the plural shall include the singular, and the singular shall include the plural, wherever appropriate.

IN WITNESS WHEREOF, the parties hereto have executed this Trust Agreement this the _28th_ day of _September_, 1991.

SIGNED, SEALED, AND DELIVERED
IN THE PRESENCE OF:

_____
_____
As to Dana P. Brigham

_____
DANA P. BRIGHAM, Trustee

_____
_____
As to Patricia M. Brigham

_____
PATRICIA M. BRIGHAM,
SUCCESSOR TRUSTEE

BENEFICIARY (IES):

_____
MARION BRIGHAM and DANA P.
BRIGHAM, as Trustees of
the Marion Brigham
Revocable Trust dated the
_13th_ day of _July_,
1990.

Percentage owned 100%

12

STATE OF ~~FLORIDA~~ North Carolina )
                  Mitchell ) SS
COUNTY OF ~~DADE~~ )

     I hereby certify that on the 29th day of September, 1991, before me, an officer duly authorized in the State aforesaid and in the County aforesaid, to take acknowledgments, personally appeared DANA P. BRIGHAM, Trustee, and PATRICIA M. BRIGHAM, Successor Trustee, to me known to be the persons described in and who executed the foregoing instrument and they acknowledged before me that they executed the same.

     WITNESS my hand and official seal in the County and State last aforesaid this 29th day of September, 1991.

                               *Patricia Anne Elkins*
                                 Notary Public, ~~State of Florida~~

My commission expires:

My Commission Expires April 28, 1996

crrealest\brigland.txt

13

**NO EXCISE TAX**

NORTH CAROLINA
YANCEY COUNTY

Filed for Registration on the _164L_
day of _Oct_, 199_L_ at
_3:34_ o'clock _P._ M., and registered in
the Office of Register of Deeds, and verified
this _16_ day of _Oct_, 19_91_
at _3:41_ o'clock _P._ M. in Book _232_
of deeds on page _252_ etc.

_[signature]_
Register of Deeds

Excise Tax — 0 —

Recording Time, Book and Page

Tax Lot No. .......................................... Parcel Identifier No. ..........................................

Verified by .................... _Yancey_ .................... County on the _16_ day of .................... _Oct_, 19_91_

by _[signature]_

Mail after recording to ...........................................

This instrument was prepared by Steven I. Goldstein-Patla, Straus, Robinson & Moore, P.A.
29 North Market Street, Asheville, NC 28801

Brief description for the Index

---

## NORTH CAROLINA SPECIAL WARRANTY DEED

THIS DEED made this _28th_ day of September .................... , 19 _91_ , by and between

| GRANTOR | GRANTEE |
|---|---|
| Marion W. Brigham, the unremarried widow, surviving spouse and sole heir at law of E.F.P. Brigham, deceased | Dana P. Brigham, as Trustee of the EFP Brigham Land Trust Number 1, under Agreement dated _September 28_, 1991<br><br>c/o Brigham & Brigham<br>Suite 280<br>8181 Miami Lakes Drive West<br>Miami Lakes, FL 33016 |

Enter in appropriate block for each party: name, address, and, if appropriate, character of entity, e.g. corporation or partnership.

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, that the Grantor, for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple, all that certain lot or parcel of land situated in the City of .................... , .................... Township, .................... _Yancey_ .................... County, North Carolina and more particularly described as follows:

Being the same real property described on Exhibit A attached hereto which is incorporated herein by reference.

The conveyance herein is to Dana P. Brigham as Trustee abovestated, and thereafter to his successors in office, with Patricia M. Brigham being the initially named successor Trustee.

## EXHIBIT "E"



N.C. Bar Assoc. Form No. 6 © 1977
Printed by Agreement with the N C Bar Association — 1981

Produced by Goldstein

000784

The property hereinabove described was acquired by Grantor by instrument recorded in

.....................................................................................................................................................................................................

A map showing the above described property is recorded in Plat Book ................... page ............

TO HAVE AND TO HOLD the aforesaid lot or parcel of land and all privileges and appurtenances thereto belonging to the Grantee in fee simple.

And the Grantor covenants with the Grantee, that Grantor has done nothing to impair such title as Grantor received, and Grantor will warrant and defend the title against the lawful claims of all persons claiming by, under or through Grantor, except for the exceptions hereinafter stated.

Title to the property hereinabove described is subject to the following exceptions:

   Easements of record and in place, restrictions of record, the use provisions of any govern-
   mental ordinance affecting the above, and taxes for the current year. Further subject to all
   rights of way and exceptions to title as set forth in the deeds referred to in Exhibit A.

IN WITNESS WHEREOF, the Grantor has hereunto set his hand and seal, or if corporate, has caused this instrument to be signed in its corporate name by its duly authorized officers and its seal to be hereunto affixed by authority of its Board of Directors, the day and year first above written.

| | | |
|---|---|---|
| ........................................................ (Corporate Name) | | Marion W. Brigham ......................... (SEAL) |
| By: ........................................................ | U S E   B L A C K   I N K   O N L Y | **BLUE INK** |
| ........................................................ President | | ........................................................ (SEAL) |
| ATTEST: | | ........................................................ (SEAL) |
| ........................................................ Secretary (Corporate Seal) | | ........................................................ (SEAL) |

SEAL - STAMP

NORTH CAROLINA, ........................................ County.

I, a Notary Public of the County and State aforesaid, certify that Marion W. Brigham, the unre-
married widow, surviving spouse and sole heir at law of E.P.P. Brigham, Grantor,
                                                                     deceased
personally appeared before me this day and acknowledged the execution of the foregoing instrument. Witness my
hand and official stamp or seal, this 24th day of ...September........................., 19 91..

My commission expires: My Commission Expires April 28, 1996  Patricia Anne Elkins Notary Public

SEAL - STAMP

NORTH CAROLINA, ........................................ County.

I, a Notary Public of the County and State aforesaid, certify that ............... ........................................
personally came before me this day and acknowledged that .... he is ............................ Secretary of
........................................ a North Carolina corporation, and that by authority duly
given and as the act of the corporation, the foregoing instrument was signed in its name by its ....................
President, sealed with its corporate seal and attested by ............ as its ........................................Secretary.
Witness my hand and official stamp or seal, this ..... day of ........................,19......

My commission expires: ........................................ ........................................ Notary Public

NORTH CAROLINA, YANCEY COUNTY

The foregoing Certificate of .... Patricia Anne Elkins N.P.

........................................................................................................................................

........................................................................................................................................

is/are certified to be correct. This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof.   This 16 day of October, A.D. 1991.

.... MILDRED JOBE ....................................................................... REGISTER OF DEEDS FOR ....... YANCEY ........................ COUNTY
By Kathy B. Hullett ........................................ Deputy/Assistant Register of Deeds.

N.C. Bar Assoc. Form No. 6 © 1977
Printed by Agreement with the N.C. Bar Association - 1981

POOLE PRINTING CO., INC. P.O. BOX 17326 RALEIGH, N.C. 27619

BRIGHAM-1
NANCY disk

EXHIBIT A

PARCEL  1:  Lying and being in Crabtree Township and being all that real property described in that deed dated March 21, 1966 from E. W. Huskins and wife, Hazel Huskins, and Mrs. Peggy H. Fortner, widow, to E.F.P. Brigham and wife, Marion W. Brigham, which deed is recorded in Yancey County Deed Book _136_ at Page _223_, including but not limited to both the First and Second Tracts thereof.

PARCEL  2:  Lying and being in South Toe Township and being the sum of all the real property described in (i) that deed dated May 24, 1966 from J. Thomas Gurney and wife, Blanche Gurney to E.F.P. Brigham and wife, Marion W. Brigham, which deed is recorded in Yancey County Deed Book _136_ at Page _427_, plus (ii) that deed dated December 19, 1964 from Mrs. Ruth C. Rannells and husband, Earl Rannells to E.F.P. Brigham and wife, Marion W. Brigham, which deed is recorded in Yancey County Deed Book _134_ at Page _183_, plus (iii) that deed dated November 18, 1964 from Sallie Robinson and husband, Luther M. Robinson to E.F.P. Brigham and wife, Marion W. Brigham, which deed is recorded in Yancey County Deed Book _134_ at Page _122_, plus (iv) that deed dated December 9, 1964 from Melvin W. Webb et ux, et al to E.F.P. Brigham and wife, Marion W. Brigham, which deed is recorded in Yancey County Deed Book _134_ at Page _176_, including but not limited to tracts of 4 acres, 33.69 acres, 11.75 acres and 1/4 acre, all the same more or less.

PARCEL  3:  Lying and being in Crabtree Township, and being the same identical real property described in that deed dated February 26, 1969 from M. John DuBose and wife, Delia S. DuBose to E.F.P. Brigham and wife Marian (sic) W. Brigham, which deed is recorded in Yancey County Deed Book _142_ at Page _164_, including but not limited to the tract of 64.9 acres, more or less, described therein.

PARCEL  4:  Lying and being in Crabtree Township, and being all that real property described in that deed dated January 17, 1969, from E. B. Chrisawn and wife Mae H. Chrisawn to E.F.P. Brigham and wife, Marion W. Brigham, which deed is recorded in Yancey County Deed Book _142_ at Page _166_, including but not limited to a tract of 6 acres, more or less, a tract of 4 acres, more or less, and a tract of 1 acre, more or less.

PARCEL  5:  Lying and being in Crabtree Township, and being the same identical real property described in that deed dated January 17, 1969, from E. N. Stamey, to E.F.P. Brigham and wife, Marion W. Brigham, which deed is recorded in Yancey County Deed Book _142_ at Page _168_, including but not limited to the 58.9 acre tract, more or less, described therein.

PARCEL  6:  Lying and being in South Toe Township, and being the sum of the real property described in (i) that deed dated December 3, 1969, from Helen L. Madara, et vir et al, to E.F.P. Brigham and wife, Marion W. Brigham, and recorded in Yancey County Deed Book _143_ at Page _343_, plus (ii) that deed dated November 17, 1969, from Charlotte R. Billmyre et al to E.F.P. Brigham and wife, Marion W. Brigham, which deed is recorded in Yancey County Deed Book _143_ at Page _287_ including but not limited to the 33-1/3 acre tract, more or less, and the right of way described therein.

PARCEL  7:  Lying and being in Crabtree Township, and being the same identical real property described in that deed dated February 19, 1965 from Roy Ray and wife, Daphne Ray, to E. F. P. Brigham and wife, Marion W. Brigham, which deed is recorded in Yancey County Deed Book _134_ at Page _351_, including but not limited to the 2.9 acre tract described therein.

PARCEL  8:  Lying and being in Crabtree Township, and being the same identical real property described in that deed dated January 22, 1965 from Clyde Laws and wife, Edith Laws to E.F.P. Brigham and wife, Marion W. Brigham, which deed is recorded in Yancey County Deed Book _134_ at Page _275_, including but not limited to the .67 acre tract and the Water Rights described therein.

PARCEL 9: Lying and being in Crabtree Township, and being the same identical real property described in that deed dated June 23, 1959, from W. W. Hennessee and wife, Ruby Hennessee, to E.F.P. Brigham and wife, Marion W. Brigham, which deed is recorded in Yancey County Deed Book 123 at Page 66, including but not limited to the 670 acre tract and the 250 acre tract described therein.

PARCEL 10: Lying and being in Crabtree Township, being the same identical real property described in that deed dated April 5, 1965 from the Feldspar Corporation to E.F.P. Brigham and wife, Marion W. Brigham, which deed is recorded in Yancey County Deed Book 134 at Page 508.

PARCEL 11: Lying and being in Crabtree Township, and being the sum of the real property described in (i) that deed dated August 1, 1959, from The Feldspar Corporation to E.F.P. Brigham and wife, Marion W. Brigham, recorded in Yancey County Deed Book 228 at Page 228, plus (ii) that deed dated November 22, 1961, from A. A. Hensley and wife, B. R. Hensley, to E.F.P. Brigham and wife, Marion W. Brigham, which deed is recorded in Yancey County Deed Book 129 at Page 117.

PARCEL 12: Lying and being in Crabtree Township, and being the same identical real property described in that deed dated July 1, 1966, from M. John DuBose and wife, Delia S. DuBose, to E.F.P. Brigham and wife, Marion W. Brigham, which deed is recorded in Yancey County Deed Book 136 at Page 537, including but not limited to the 6 acre parcel and the Right-of-Way described therein.

PARCEL 13: Lying and being in Ramseytown Township, and being the same identical real property described in that deed dated May 16, 1966, from Daisy Williams, widow, Brown Williams, single, and Coy Williams and wife, Mary Williams to E.F.P. Brigham and wife, Marion W. Brigham, which deed is recorded in Yancey County Deed Book 136 at Page 457, including but not limited to the 50 acre tract and the 2 acre tract described therein.

PARCEL 14: Being any and all real property interests of every kind and nature in and to property located in Yancey County, North Carolina, it being the Grantor's intention to divest all her real property interests in Yancey County, North Carolina and vest the same in the Grantee hereby.

258·298

FILED

BOOK 258 PAGE 298

1994 AUG 25 AM 11: 06

WILLODEE JOBE
REGISTER OF DEEDS
YANCEY CO. N.C.

Willodee Jobe

005658

## NO EXCISE TAX

Excise Tax  -0-

Recording Time, Book and Page

| | |
|---|---|
| Tax Lot No. ........................................... | Parcel Identifier No. ........................................ |
| Verified by ........................ 4 ................ | County on the ........ day of ........ , 19 .... |
| by .M.v. | |

Mail after recording to ......................................................

✓ This instrument was prepared by ...... Steven I. Goldstein- Patla, Straus, Robinson & Moore, P.A.
............................................. 29 N. Market St., Asheville, NC 28801 ........................
Brief description for the Index

## NORTH CAROLINA SPECIAL WARRANTY DEED

THIS DEED made this ....22.... day of ......August........................ , 19 .94. , by and between

| GRANTOR | GRANTEE |
|---|---|
| Dana P. Brigham, as Trustee of the EPP Brigham Land Trust Number 1, under Agreement dated September 28, 1991 | Dana P. Brigham, as Trustee of the Cloud Valley Land Trust No. 1, under Agreement dated August 22, 1994<br><br>c/o Brigham & Brigham<br>Suite 280<br>8181 Miami Lakes Drive West<br>Miami Lakes, FL  33016 |

Enter in appropriate block for each party: name, address, and, if appropriate, character of entity, e.g. corporation or partnership.

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, that the Grantor, for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple, all that certain lot or parcel of land situated in the City of ................................ Crabtree ...... Township, ................. Yancey ....... County, North Carolina and more particularly described as follows:

Being the same real property described on Exhibit A which is attached hereto and incorporated herein by reference.

N.C. Bar Assoc. Form No. 6 © 1977
Printed by Agreement with the N.C. Bar Association — 1981

## EXHIBIT "F"



EXHIBIT
P-Trial
#84
Entered
ALL-STATE LEGAL®

The property hereinabove described was acquired by Grantor by instrument recorded in ...........................................................................

A map showing the above described property is recorded in Plat Book ........... page .............. .

TO HAVE AND TO HOLD the aforesaid lot or parcel of land and all privileges and appurtenances thereto belonging to the Grantee in fee simple.

And the Grantor covenants with the Grantee, that Grantor has done nothing to impair such title as Grantor received, and Grantor will warrant and defend the title against the lawful claims of all persons claiming by, under or through Grantor, except for the exceptions hereinafter stated.

Title to the property hereinabove described is subject to the following exceptions:

Easements of record and in place, restrictions of record, the use provisions of any govern-mental ordinance affecting the above, and taxes for the current year.

IN WITNESS WHEREOF, the Grantor has hereunto set his hand and seal or if corporate, it has caused this instrument to be signed in its corporate name by its duly authorized officers and its seal to be hereunto affixed by authority of its Board of Directors, the day and year first above written.

-------------------------------------     Dana P. Brigham ........................................(SEAL)
       (Corporate Name)

By: .........................................................     ..........................................................(SEAL)

...................................................President     ..........................................................(SEAL)

ATTEST:

.........................................................     ..........................................................(SEAL)

...............................Secretary (Corporate Seal)

**USE BLACK INK ONLY**

SEAL / STAMP

NORTH CAROLINA, .....Buncombe............... County.

I, a Notary Public of the County and State aforesaid, certify that ..Dana..P...Brigham...as..Trustee

..Abovestated......................................................................................... Grantor,

personally appeared before me this day and acknowledged the execution of the foregoing instrument. Witness my hand and official stamp or seal, this ..22.. day of ....August.......... 19.9A..

My commission expires: 10-12-98     ...............................Notary Public

SEAL - STAMP

NORTH CAROLINA, ..................... County.

I, a Notary Public of the County and State aforesaid, certify that ................................

personally came before me this day and acknowledged that .... he is ........................... Secretary of

........................................ a North Carolina corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its .................

President, sealed with its corporate seal and attested by ............ as its ............................Secretary.

Witness my hand and official stamp or seal, this ...... day of ................................, 19......

My commission expires: ...................................................

........................................................................Notary Public

The foregoing Certificate(s) of ..Steven.A...Goldstein,.N.P.

.........................................................................................................

.........................................................................................................

is/are certified to be correct. This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof.

..........................................................................REGISTER OF DEEDS FOR ..Yancey.......... COUNTY

BY ........................................................... Deputy/Assistant Register of Deeds.

N.C. Bar Assoc. Form No. 5 © 1977
Printed by Agreement with the N.C. Bar Association  1981

POOLE PRINTING CO., INC. P.O. BOX 17275 RALEIGH, N.C. 27619

Produced by Goldstein

000644

brigham.1-2

EXHIBIT A TO DEED TO DANA P. BRIGHAM, AS TRUSTEE
OF THE CLOUD VALLEY LAND TRUST NO. 1


Being all of Parcels 7, 8, 9, 10 and 11, inclusive, as described in
that deed dated September 28, 1991 from Marion W. Brigham to Dana
P. Brigham, as Trustee of the EFP Brigham Land Trust Number 1,
under Agreement dated September 28, 1991, which deed is recorded in
Yancey County Deed Book 232 at page 252.

There is excepted and excluded from the foregoing that tract of 196
acres, more or less, described in a deed from EFP Brigham et ux
dated _18 December_, 1979 and recorded in Yancey County Deed Book
_180_ at page _13_ .

There is further excepted from the foregoing property conveyed, any
and all buildings and/or improvements located on the abovestated
parcels 7 through 11 inclusive, together with parcels of land
underlying the same of not more than three acres each abutting said
buildings and/or improvements.

Grantor, by execution hereof, and Grantee, by acceptance hereof,
acknowledge and agree that the foregoing exception regarding
buildings and/or improvements, together with three acres
thereunder, is uncertain, but the property is presently being
surveyed.  These ambiguities will be rendered certain by a deed of
correction to be signed by Grantor and Grantee, which deed shall
have the same Grantor and Grantee therein.

Produced by Goldstein

000645

M:\STETTIN\Circuit Court\Brigham-Brigham\Order 7 16-03 wpd

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

EDWARD BRIGHAM, SANDRA FORBES-      )
BERAN, DANA FORBES, ROBIN FORBES    )       PROBATE DIVISION
and ALLEN FORBES,                   )
                                    )
          Plaintiffs,               )
v                                   )       CASE NO · 03-2561 CP 02
                                    )
DANA BRIGHAM, individually and as   )
trustee of the Defendant trusts, PATRICIA )
BRIGHAM, individually and as successor )
trustee of the Defendant trust, the MARION W )
BRIGHAM TRUST NO. 1, the BLUE ROCK  )
LAND TRUST NO. 1, the SEVEN MILE    )
RIDGE LAND TRUST NO. 1, the RICE    )
ROAD LAND TRUST NO. 1, the HALLS    )
CHAPEL LAND TRUST NO. 1, the CLOUD  )
VALLEY LAND TRUST NO. 1, and the    )
COVES/JACKS CREEK LAND TRUST NO 1,  )
                                    )
          Defendants                )
_____)

## FINAL JUDGMENT INCLUDING
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This suit concerns claims that Defendants Dana Brigham and his wife Patricia took

advantage of Dana's mother, Marion W Brigham, in order to secretly and unfairly receive the bulk

of her property. The litigation, which consumed twenty-one days of trial, involved hundreds of

exhibits which cover more than twenty-five years of financial transactions   After careful review of

the testimony, exhibits and memoranda, the Court concludes that the Plaintiffs are not entitled to the

relief they seek

### I. The Brigham Family

EFP Brigham (EFP) died in 1982, after a distinguished career as an attorney in Miami  He

was survived by his wife, Marion W Brigham (Marion), sons, Edward, Dana and Toby, and his

EXHIBIT "G"

daughter, Jerre Forbes.  Mrs. Forbes passed away in 1996, after a lengthy battle with cancer.  The Forbes Plaintiffs are her heirs.

All of EFP's sons were lawyers, as was his son-in-law, Peter Forbes.  Each of them worked for EFP, but only Dana remained with the firm.  Edward became a developer in upstate Florida, and, after that business failed, resulting in a significant financial loss to his parents, he returned to the practice of law without much financial success.  He received financial assistance from his mother on a continuing basis throughout the 1980's and 1990's.

Toby is the only sibling not involved in this litigation.  After leaving the Brigham firm, he quickly established a successful condemnation law practice of his own.  Because Marion believed that he had taken cases from EFP's firm, she removed him as an heir of her estate.

Peter Forbes left the law firm to become an in-house corporate lawyer.  Later, he moved to Colorado, becoming active in real estate.  The Forbes family also received financial assistance from Marion for family needs, including Jerre's medical expenses.

Dana remained at the firm, known as Brigham & Brigham, P.A.  Patricia, started as an employee of the firm, eventually becoming the office manager.

In addition to practicing law, Dana and Patricia became involved in various business enterprises, including Hughes Laboratories, Sekot Laboratories and Sekot Industries.  Each of these ventures eventually failed despite receiving substantial financial assistance from Marion.

None of the monies advanced by Marion to her children were ever repaid.  Instead, and on more than one occasion, Marion expressly forgave her children's debts whether provided by her as a gift, a loan or as an investment.

CASE NO.: 03-2561 CP 02

## II.  Plaintiffs' Claims

Plaintiffs seek to avoid essentially every transfer of Marion's property made to or on behalf of Dana and Patricia in the form of a gift, an investment in their business ventures, or paid to Patricia as salary.  They demand an accounting and money damages, claiming that Dana breached his duty as Marion's Trustee, attorney and fiduciary, and Patricia abused her position as Marion's secretary and confidante in order to induce her to transfer most of her property to them.  The contention is that Dana and Patricia were able to accomplish this because Marion was either incompetent or was unduly influenced by them to make the transfers in question.

## III.  Marion's Competence

As to the issue at trial concerning Marion's competence, the evidence is clear that Marion remained mentally competent until several years before her death in 2002.  After EFP's death in 1982, she managed with only day help.  Until the late 1990's, Marion spent half of each year in North Carolina at her summer home on a large tract of land known as Cloud Valley.  While there, she lived alone in the house with a companion in a nearby trailer and a handyman to run the property.

The greater weight of the evidence is that Marion was intelligent, alert, clear-headed and strong-willed until the late 1990's.  She was generally described as someone who was very forceful and unafraid to speak her mind.  A psychiatrist who examined her in 1996, after commenting on her remarkable physical and mental condition, concluded that she was competent.  I find from the evidence that Marion was competent to make decisions as to the disposition of her property at all times material to these proceedings.

- 3 -

CASE NO · 03-2561 CP 02

### IV.  The North Carolina Properties

During his lifetime EFP and Marion had acquired a substantial amount of real estate in North Carolina.  At his death, Marion became the sole owner.  The largest piece of land was a 691 acre wooded tract called Cloud Valley.  This included the Brigham family home place together with several outbuildings.  For decades Cloud Valley and the nearby Brigham properties had been used by the Brighams as a family retreat for vacations and gatherings.  As time passed, however, the family used it less and less.  For this reason, and because Marion believed the cost to maintain her North Carolina properties had become burdensome, she began to focus her attention on how to dispose of the land in order to minimize any estate tax upon her death.

### V.  Marion Brigham's Estate Planning

Shortly after EFP's death, Dana introduced Marion to his accountant and estate lawyer, Harvey Burger.  He soon became her accountant and estate planner.  Marion had him prepare a number of wills and trust agreements, beginning in May, 1984, all of which named Dana as the trustee of her trusts and as the personal representative in each will.

A constant theme in all of these instruments, up through August 22, 1994, was that Marion intended to treat her children equally, excepting only Toby for the reason previously noted.  Under these earlier versions all of her North Carolina properties were considered as family assets.  For example, in a July 13, 1990 Trust, Marion made provision for money to be used for the maintenance of the "home property" she owned in North Carolina for a period of two years in order "to allow the children and grandchildren sufficient time to either purchase the property from the Trust estate, to

- 4 -

sell same or to develop the same." That document required Dana, as her trustee,"to abide with a majority of their wishes with regard to the ultimate disposition of this property."

With some variation, this remained her estate plan until August 22, 1994. On that date, Marion created a new series of trusts, each holding title to an individual parcel of her North Carolina land. Previously, all of the real estate in North Carolina was titled in the EFP Brigham Land Trust No. 1. Marion was the sole beneficiary of this trust with Dana serving as her trustee. Each of the new trusts created on August 22, 1994, continued Dana as the sole trustee, and, while Marion remained the beneficiary of many of the new trusts, Dana was named as sole beneficiary of the Trust holding title to 688 of the 691 acres of the Cloud Valley parcel; that is, his Trust owned all of the Cloud Valley property except for the 3-acre piece containing the house and some outbuildings. Marion remained as the sole beneficiary of a new trust holding title to this 3-acre parcel until December, 1994. At that time she assigned 24% of her beneficial ownership in this trust to Dana. The effect of these two transfers was that Dana became the beneficial owner of all of the Cloud Valley property except for 76% of the beneficial interest in the 3-acre parcel.

Defendants' explanation for the transfers was that Marion intended that Dana have this property. She used her lifetime gift tax exemption for both of the Cloud Valley transfers in order to reduce her estate taxes. All of the August 22, 1994, transfers were made without notice to the other Brigham family members.

VI. The Claims of Undue Influence on Marion by Dana and Patricia

Following EFP's death in 1982, Marion became increasingly reliant on Dana and Patricia for management of her affairs. Patricia took over the job of maintaining Marion's financial and

CASE NO.: 03-2561 CP 02

banking records as part of her duties as Marion's secretary and confidante   After Dana became a

signatory on Marion's bank accounts he quickly took control of her investments.  Over time, Dana

and Patricia handled almost all of Marion's financial and personal responsibilities.

The evidence is equally clear, however, that Marion was completely aware of Dana's control

of her assets and that she permitted him to continue of her own volition.  Marion remained involved

in monitoring her financial affairs.  She assisted in the preparation of her tax returns, reviewed and

corrected financial statements and accountings of her income and expenses.  I find from the greater

weight of the evidence that Marion authorized Dana and Patricia to run her affairs.  She remained

satisfied with their stewardship in spite of the financial losses she suffered.

The extent of control by Dana and Patricia over their mother's life led to continuing

complaints by the other children, particularly when Marion agreed to provide financial assistance

to Jerre Forbes and Edward Brigham.  Dana and Patricia were given control of the expenditures

made on their behalf, insisting on rigid, demeaning budgets and petty accountings.  When her

children approached her about this, she refused to change the procedure, indicating that she preferred

to allow Dana and Patricia to handle her affairs.

Plaintiffs have criticized the investments made by Dana using his mother's money, including

the purchase of gold coins.  Plaintiffs' contention that Dana failed to properly account for these

assets is more properly raised in Marion's estate proceedings because it is undisputed that Marion

was the owner of the remaining gold at the time of her death.  Her investment in coins, and later in

gold purchased on margin may not have been profitable, but there is sufficient evidence to support

the conclusion that these purchases were made with her knowledge and approval.

- 6 -

CASE NO. 03-2561 CP 02

Dana also used Marion's assets in his personal business ventures on a number of occasions. Marion mortgaged property she owned in Collier County, Florida, in order to secure a loan to Hughes Laboratories, a company controlled by Dana and Patricia. This property was later sold and the proceeds used to help pay the company's debt. Neither principal nor interest was paid to Marion The issue at trial as to whether Marion received an ownership interest in Hughes Laboratories in return for the use of her money is irrelevant since the business failed. Whether viewed as a loan or an investment, her money was lost.

Marion's money was also used by Dana in businesses he and his wife operated called Sekot Industries and Sekot Laboratories. While Dana and Patricia received substantial salaries and other benefits from the businesses, Marion did not. Here too, Marion's money was lost when these ventures failed.

Another investment by Dana using Marion's money was made in the early 1990's, involving the acquisition by Dana, acting as trustee for Marion, of a tax certificate and mortgage encumbering real estate in Titusville, Florida. After default in payment and a foreclosure action, Dana accepted a deed from the owner in settlement. Dana later resold the property but was unable to produce proof of the proper disbursement of the sale proceeds. At trial, he was able to prove repayment to Marion only of the initial investment and interest. He could not account for the profit realized from the sale of the property.

Although there were other investments of Marion's assets made by Dana, it is safe to say none produced much if any financial benefit to Marion. Nonetheless, the evidence does not support

- 7 -

CASE NO · 03-2561 CP 02

the conclusion that Marion was unaware of being taken advantage of. She was both aware of the investments and her losses. She chose to forgive it all by releasing her claims against her children.

Plaintiffs' contention that Dana breached his duty as a fiduciary to Marion by taking advantage of his relationship with her for his and his wife's personal gain, requires that they establish the existence of the Defendants' undue influence by showing that Marion's free will and the exercise of her sound mind were in fact overcome by evidence of the Defendants' "over persuasion, duress, force, coercion or artful or fraudulent contrivances to such a degree that there is a destruction of free agency and will power." Langford v. McCormick, 552 So. 2d 964, 968 (Fla. 1st DCA 1989). See also, Derovanesian v. Derovanesian, 857 So. 2d 240 (Fla. 3d DCA 2003).

These decisions involve contested testamentary bequests, but the principle announced appears to be applicable to this case. The free will of Marion, who was otherwise competent, was required to be shown by the preponderance of the evidence to have been overcome by the undue influence of the Defendants. Plaintiffs, in my judgment, have failed to do so. After carefully reviewing the evidence I find that Plaintiffs have failed to prove that undue influence by Dana and Patricia led to the disputed gifts and transfers. I further find that Marion knew that Dana was using her assets for his own businesses, and, as Trustee, he was gifting her property to himself. The greater weight of the evidence shows that Marion authorized him to do this; that she approved of his actions, and that she forgave any debts he owed to her.

## VII. The August 22, 1994 Transfers

The conveyances to Dana of the Cloud Valley property in North Carolina are a primary focus

of the Plaintiffs' claims. It was the single largest asset transferred to Dana. Plaintiffs' contention is that Dana, with Burger's assistance, did this without Marion's knowledge

As noted earlier, in the 1980's, Burger, with Dana and Patricia's involvement, prepared a series of trusts and estate documents for Marion. The earlier versions ensured Marion's control over her property in North Carolina during her lifetime. They also expressed Marion's desire that ultimate ownership of the land was to be shared by all of her children, excluding only Toby

Until September 28, 1991, Marion held title to the North Carolina properties in her own name. On that date she transferred ownership to the EFP Brigham Land Trust No. 1, an Illinois Land Trust. Dana was named as the trustee of this Trust. Under the form of trust ownership used, identification of beneficial ownership was not a matter of public record. Marion's earlier Amended Marion W. Brigham Revocable Trust of July 13, 1990, was the beneficiary of the September 28, 1991 Trust, but Marion remained the beneficiary of the July 13, 1990 Trust. Thus, on August 22, 1994, Marion's interest in the Cloud Valley property was held as the life beneficiary of a trust, which itself was the beneficiary of another trust. This trust held title to the North Carolina land.

On February 2, 1994, Marion executed a modification of her earlier trusts (but not of the September 28, 1991 EFP Brigham Land Trust No. 1, which held record title to the North Carolina land), confirming that upon her death all of that property, excepting only some minor devises to her daughter and certain of her grandchildren, was to be divided equally among her children, excluding Toby.

On August 22, 1994, a new set of documents was created which significantly altered Marion's estate plans. These instruments were prepared by Burger with the assistance of Dana and

CASE NO. 03-2561 CP 02

Patricia. They were executed at the offices of North Carolina lawyers retained by Dana to provide tax and estate advice concerning the effect of North Carolina law on the transfers of Marion's property. As noted previously, Defendants testified that these transfers were designed to minimize Marion's potential estate taxes. Dana and Burger testified this planning was done with Marion's involvement and at her express direction.

The North Carolina lawyers were present when the documents were signed on August 22, 1994. They testified at trial as to Marion's competence and the events of the day. Their testimony was that Marion seemed competent and did not appear to be acting under any compulsion. One of them stated he satisfied himself as to the state of Marion's mind by questioning her. He saw no deception or misconduct at the time. Marion appeared to him to be congenial, talkative and in agreement with everything that was being done. His conclusion was that Marion was mentally sharp, not easily misled, and appeared to know what she was doing. He also stated his belief, consistent with the testimony of Dana and Burger, that Marion had reviewed the August 22, 1994, documents prior to the meeting in his offices.

Plaintiffs strongly disagree with this evidence. They contend that Marion was kept in the dark as to the transfer of her interests in Cloud Valley. For example, they point out that Marion never confirmed her approval of the Cloud Valley transfer to Dana by counter-signing a copy of that deed, as she had done with some of the other deeds Dana signed on that date. Plaintiffs contend that Marion never knew Dana had signed her Cloud Valley property over to his trust. They rely on statements made by Marion after August 22, 1994, in which she referred to her ownership of Cloud Valley in the present tense as proof that she had never intended to gift it to Dana. They also refer

CASE NO.: 03-2561 CP 02

to letters Dana sent Toby in 1996, in which he stated that, as Marion's attorney, he was offering the Cloud Valley property for sale to the family before attempting to sell it in the open market. In that correspondence he did not reveal that he already owned the Cloud Valley property when he wrote these letters.

These statements are facially inconsistent with the claim of an outright gift of the property to Dana on August 22, 1994, but it should be noted that Marion's use of the property did not change after August 22, 1994. She used the property as she always had. She continued to control the trust which owned the Cloud Valley house in which she lived part of each year after August, 1994, in the same manner as she had for many years before. On the surface, at least, nothing had changed.

I conclude that the Plaintiffs' claims are insufficient to overcome the more credible evidence that Marion did intend to gift the property to Dana as part of her estate planning. First, in December, 1994, Marion executed a conveyance of 24% of her beneficial interest in the remaining 3-acre Cloud Valley parcel to Dana just four months after August 22, 1994. She signed the instrument of conveyance.

Second, there is evidence of her intent. Dana testified that Marion told him she was going to give him the Cloud Valley property in May, 1994. He said her decision was based upon disappointment that the family had largely stopped using the property, and her belief that management responsibilities and expenses were a substantial burden.

Burger testified that it was Marion's intention to remove as much of her real estate holdings in North Carolina from her estate as possible in order to minimize estate taxes at her death. This was, he said, the focus of her estate planning. The valuations placed the property transferred to Dana

- 11 -

CASE NO.: 03-2561 CP 02

were set at the maximum allowed under the estate tax laws in order to avoid tax obligations. Burger said that this was discussed with Marion. She told him of her intent to gift the Cloud Valley property to Dana and he prepared the documents in accordance with her wishes. Burger wrote to Dana on July 28, 1994, to review the estate planning strategy he was developing for Marion, and referred to Marion's intent to gift Dana the "homefront property".

Most importantly, there is a writing signed by Marion on August 22, 1994, which directly addresses her intentions concerning the Cloud Valley property. Previously, she provided that this property would be divided among her children, excluding Toby. On August 22, 1994, on the same date as the other instruments referred to earlier, Marion created the Marion W. Brigham Revocable Trust. In it, she 'settled up' the disposition of her properties, once again waiving any claims she held against her children at the time of her death. She expressly forgave all of their debts to her. She then made provision to gift: (a) to a trust for her daughter Jerre, property Marion or her Trust owned in Colorado; (b) to Patricia, certain property Marion owned in Monroe County, Florida, and, (c) she wrote that, "If, at the time of the Settlor's death, the title to any buildings, improvements or real estate located in Yancey County, North Carolina, and known as Cloud Valley is includible in the Settlor's Estate, then upon the Settlor's death, the Trustee shall distribute all of said property to Dana P. Brigham." (Emphasis added).

This is hard evidence of Marion's intent to gift Cloud Valley to Dana. It is consistent with Burger's testimony that Marion intended Dana to have the Cloud Valley property. Independent witnesses present at the signing of this document testified that Marion appeared competent and seemed to understand the effect of the transfers being made that day.

CASE NO.: 03-2561 CP 02

Plaintiffs' argument is that these instruments were prepared by Burger while he was acting under a conflict of interest because his loyalties were primarily to Dana. I do not find this to be supported by the greater weight of the evidence. Burger, who had represented Marion for many years, described her as a demanding and attentive client. She expressed her wishes to him in definite terms. Although Burger acknowledged having consulted with Dana in the preparation of the August 22, 1994 documents, he said that he followed Marion's instructions to gift the Cloud Valley property to Dana.

Plaintiffs emphasize that Dana's use of the form of an Illinois Land Trust to hold title to the property prevented anyone else in the family from becoming aware of these transactions. While this is certainly true, in itself that does not prove an impropriety. Such forms of trust are commonly used in order to facilitate transfers of property without liability for taxes or transfer fees.

### VIII. Conclusions of Fact

After a careful review and consideration of each of the arguments made by Plaintiffs, I conclude that their claims have not been proven by the preponderance of the evidence. The transfer of Cloud Valley and the other property was not the result of Marion's incompetence, or Dana and Patricia's undue influence or fraud.

Marion had valid reasons for her gifts to Dana and Patricia. They provided her with attention and companionship on a daily basis and she responded to this. Their assistance to Marion made her life easier. She made no secret of her feelings of love and gratitude toward Dana and Patricia for all that they had done and were doing for her. Everyone in the Brigham family knew how much she relied upon them.

CASE NO.: 03-2561 CP 02

It was not a secret that Marion had a pattern of treating Dana and Patricia generously for many years. Her children were aware of this. They expressed their concerns over Dana and Patricia's influence, yet they did nothing to prevent or stop it. On balance, I conclude that Marion's gifts to Dana and Patricia were a reflection of her close feelings for them and in gratitude for all that they did for her.

There is no presumption at law of fraud or undue influence on the part of a child who receives property from a parent when other siblings receive less. A parent is free to gift property to one of or to none of her children. *See, e.g.*, Hallam v. Gladman, 132 So. 2d 198 (Fla. 2d DCA 1961); Rappaport v. Kalstein, 24 So. 2d 301 (Fla. 1946). Plaintiffs had the burden at trial to prove their case and failed to do so. Further, it should be kept in mind that Marion did not disinherit Jerre, Edward or her grandchildren. She provided substantial financial assistance to them during her lifetime and she made them heirs of her estate.

### IX. The Legal Defenses

There are additional reasons why Plaintiffs' claims must be denied. First, with only two exceptions, the causes of action are time barred because they occurred more than four years prior to the filing of this suit on June 11, 2003.

Section 95.11, Fla. Stat., provides that the time within which an action for the recovery of damages for claims based upon; Undue Influence (Count I), Breach of Fiduciary Duty (Count II), Self Dealing (Count III), Conversion of Trust Assets (Count IV), Mismanagement of Trust Assets (Count V), Constructive Trust (Count VII) and Conspiracy (Count IX), is limited to four years from the time of the accrual of the last element of each cause of action. No extension is provided in the

statute for any delay on the part of the injured party in discovering the existence of any of the claims, even if the Plaintiffs themselves were wholly without fault, and even if the Defendants concealed their actions. *See*, Davis v. Monahan, 832 So. 2d 708 (Fla. 2002)  Therefore, I find that all of Plaintiffs' claims which arose more than four years prior to June 11, 2003, are time barred, excepting only those claims based on fraud and tortious interference with an inheritance expectancy.

Plaintiffs contend the claims are not time barred because the misconduct complained of was continuing in nature, persisting up to the time this suit was filed.  Even assuming for the sake of argument that the evidence was sufficient to show that Dana did act improperly, this argument is not supported by facts in the record. Each transfer claimed by Plaintiffs to be actionable, whether it was the receipt of money or property by Dana and Patricia as a result of undue influence over Marion, or the abuse by Dana of his fiduciary relationship with Marion while acting as her attorney and trustee, was complete when the property in question was conveyed. That is, Dana's misconduct in effecting a transfer of Marion's property was accomplished when Marion parted with the property. All of the elements of the cause of action existed. Simply because the transfer was unknown to the Plaintiffs or was hidden is not sufficient. As explained in Davis, *supra*, an exception for delayed discovery exists only as to claims of fraud, thus all of the other claims are time barred.

The single exception is section 95.03(2)(a), Fla. Stat., which states that an action for fraud"must be begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered " All claims for fraudulent conduct which occurred prior to June 11, 1991, are time barred. Although claims as to the invalidity of the

CASE NO. 03-2561 CP 02

August 22, 1994 and the December, 1994, Cloud Valley gifts are not time barred as to claims of fraud, I find they have not been proven for the reasons previously stated.

The remaining claim for breach of inheritance expectancy did not arise until Marion's death, since such claims do not exist until the demise of the testator. *See, Whalen v. Prosser*, 719 So. 2d 2 (Fla. 2d DCA 1998). As to this claim, Plaintiffs have failed to prove by a preponderance of the evidence that the Defendants tortiously interfered with the Plaintiffs' rights to the Cloud Valley property. The greater weight of the evidence convinces me that Marion intended to gift this property to Dana, hence it never became a part of her estate.

Finally, as to all of the loans, investments and transfers of money which Plaintiffs contend were improper, these debts or claims were forgiven by Marion on several occasions.

The remaining issue raised by the Plaintiffs concerns the validity of the transfer of Cloud Valley in light of Section 737.403(2), Fla. Stat.

That statute governs the powers of trustees in the administration of trusts under their control. It states:

"(2) If the duty of the trustee and the trustee's individual interest or his or her interest as trustee of another trust conflict in the exercise of a trust power, the power may be exercised only by court authorization." (emphasis added).

It is not disputed that as trustee, Dana conveyed the Cloud Valley property from a trust in which he was not a beneficiary to a trust in which he was the sole beneficiary. This transfer to Dana would be a conflict of interest if court approval were required.

I conclude that court approval was not required because the trusts in question were not subject to court supervision. Section 727.201(2), Fla. Stat., provides that in Florida, judicial

- 16 -

CASE NO  03-2561 CP 02

intervention is not required "and no order, approval or other action of any court," is needed for the

management and distribution of a trust estate   No court supervision was required by the trust

documents in question, nor was supervision of these trusts otherwise required by Florida law.

Upon consideration of the foregoing, it is ORDERED and ADJUDGED that Plaintiffs,

having failed to prove their claims, shall take nothing by this suit, and the Defendants shall go hence

without day.

The Court retains jurisdiction to award costs and entitlement to fees.

DONE and ORDERED in Miami, Miami-Dade County, Florida this ___ day of July, 2007

_____
HERBERT STETTIN
Senior Circuit Judge

Copies Furnished to:
    Bruce A. Katzen, Esquire
    M. Lewis Hall, Esquire
    Michael J. Schlesinger, Esquire
    David R. Carlisle, Esquire

IN THE CIRCUIT COURT OF THE 11ᵗʰ JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

EDWARD BRIGHAM, SANDRA FORBES
BERAN, DANA FORBES, ROBIN FORBES and
ALLEN FORBES,

     Plaintiffs,

vs.

DANA BRIGHAM, individually and as trustee of
the Defendant trusts, PATRICIA BRIGHAM,
individually and as successor trustee of the
Defendant trust, the MARION W. BRIGHAM
TRUST NO. 1, the EFP BRIGHAM LAND
TRUST NO. 1, the BLUE ROCK LAND TRUST
NO. 1, the SEVEN MILE RIDGE LAND TRUST
NO. 1, the RICE ROAD LAND TRUST NO. 1, the
HALLS CHAPEL LAND TRUST NO. 1 the
CLOUD VALLEY LAND TRUST NO. 1 and the
COXES/JACKS CREEK LAND TRUST NO. 1,

     Defendants

PROBATE DIVISION

CASE NO. 03-2561 CP 02

---

## FINAL JUDGMENT

This case is before the Court on the Mandate of the Third District Court of Appeal's February 25, 2009 Opinion, *Brigham v. Brigham*, 11 So. 3d 374, 388 (Fla. 3d DCA 2009) (the "Opinion"). The Court has reviewed the Opinion, Plaintiffs' Motion and Memorandum on Post Appellate Issues, filed on October 19, 2009, Defendants' Reply to Plaintiffs' Motion and Memorandum on Post Appellate Issues, filed on December 2, 2009, several drafts of Plaintiffs' proposed Final Judgment, Defendants' Objections to Proposed Final Judgment Prepared by Plaintiffs, filed on December 30, 2009, the Defendants' Objections to Revised Proposed Final Judgment submitted by Plaintiffs after hearing held on January 20, 2010, and the Court file. The Court has also heard argument from counsel on December 4, 2009 and on January 20, 2010, and

1

EXHIBIT "H"

is otherwise advised in the premises. In addition, the Court has reviewed Plaintiffs' Supplement to Motion and Memorandum on Post Appellate Issues, filed on February 3, 2011, as well as Plaintiffs' Response to Defendants' Objections to Award of Punitive Damages in Proposed Final Judgment Prepared by Plaintiffs, both of which were submitted subsequent to the January 20, 2011 hearing.  Finally, the Court has reviewed post trial memoranda submitted by both parties subsequent to the December 27, 2010 trial on punitive damages.  Upon consideration, the Court finds as follows:

**A. Compensatory Damages**

1.      The Court incorporates all findings made in its Order on Mandate dated June 14, 2010, which is attached as Exhibit A to this Final Judgment, with the exception of the finding in paragraph 5 that the Zampighi painting is property of the Estate of Marion W. Brigham.  The Court had previously found that the painting is property of the Marion W. Brigham Revocable Trust and it has been turned over to its new Trustee, Robin Forbes.

2.      Based on the findings within the Order on Mandate, it is ordered and adjudged that EFP Brigham Land Trust No. 1 shall recover from Dana P. Brigham and Patricia M. Brigham, 9807 E. 25th Street, Parrish, Florida 34219, jointly and severally, the sum of $3,519,580.89, plus interest from November 1, 2009 until February 15, 2011 of $284,844.98, totaling **$3,804,425.87**, for which let execution issue.

3.      In addition, and based on the foregoing, it is ordered and adjudged that the Marion W. Brigham Revocable Trust shall recover from Dana P. Brigham and Patricia M. Brigham, 9807 E. 25th Street, Parrish, Florida 34219, jointly and severally, the sum of **$3,822,153.91**, plus interest from November 1, 2009 until February 15, 2001 of $309,332.67, totaling **$4,131,486.58**, for which let execution issue.

4.      The Court surcharges Dana P. Brigham the amounts he is required to pay against his share of each of the Trusts as a result of his breaches of fiduciary duty.

5.      In the event Patricia M. Brigham, individually, is entitled to receive any money from the Trusts described above, her interest is surcharged for the payment of all sums found to be due from her as a result of her breaches of fiduciary duty.

**B. Punitive Damages**

On the claim for punitive damages, the Court finds as follows:

1.      Mr. and Mrs. Brigham are presently insolvent; that is, they have liabilities which exceed the value of their assets and they are unable to pay their debts as they fall due.

2.      The largest of their liabilities are the sums found to be owing in the June 14, 2010 Order on the Mandate, attached hereto, to the EFP Brigham Land Trust No. 1 and the Marion W. Brigham Revocable Trust, presently totaling more than $7,900,000.

3.      In spite of the fact that they owe vastly more than they own, Mr. and Mrs. Brigham continue to enjoy a very high standard of living. They live in a luxurious waterfront home, are members of a fitness center and of Coral Reef Yacht Club in Miami-Dade County (despite the fact that they live in Central Florida), drive Mercedes-Benz automobiles, maintain an expensive rental apartment for weekend use and have made substantial purchases of personal property.

4.      The means by which they pay for this lifestyle is puzzling. Their home has been in foreclosure for many months, hence they are not paying their mortgage or real estate taxes. Neither Mr. or Mrs. Brigham are earning money from any known source, yet they pay the ongoing expenses of their household, their cars, their club, the rental apartment and their personal expenses. No reasonable explanation for this was provided. The Court finds the

3

explanations given in their testimony as implausible and in some cases, totally inexplicable. The $40,000 cash loan made to Mr. and Mrs. Brigham by Steven J. Morris in December, 2009 is a prime example. There is no loan document, there are no loan terms and there has been no repayment. Mr. Brigham claims Mr. Morris is a close friend yet he does not know Mr. Morris' phone number or address.

5.     The Brighams' reported sources of income consist of substantial unexplained cash deposits into their checking account and, from their tax returns, that they received more than $1,200,000 from sales of gold coins from 2006 through 2009. These coins were purchased with monies that principally came from sales of Brigham Trust properties. I previously entered a Temporary Restraining Order that the remaining gold and silver coins held by Mr. and Mrs. Brigham belong to the Brigham Trusts are not to be disposed of.

6.     In sum, while Mr. and Mrs. Brigham have no net worth on paper, they live as if they are wealthy. They do this by selling off assets which belong to the Brigham Trusts.

7.     Under such circumstances, an award of punitive damages is clearly indicated based upon the continuing breaches of fiduciary duty by Mr. and Mrs. Brigham.

8.     Although such an award may properly punish Mr. and Mrs. Brigham for their misconduct by exacting a sum of money which will hurt them financially, it cannot be such an amount as will bankrupt or financially destroy them. *Joab Inc. v Thrall*, 245 So. 2d 291, 293 (Fla. 3d DCA 1971). *See also, Arab Termite & Pest Control of Florida v. Jenkins*, 409 So. 2d 1039 (Fla. 1982) and its progeny.

9.     Defendants argue that no award of punitive damages may be entered because of their present financial condition. They contend that because their liabilities exceed their assets, any such award will improperly castigate or bankrupt them. Leaving aside the issue of whether a

4

judgment based upon wilful misconduct or breaches of fiduciary duty is itself dischargeable in a bankruptcy proceeding, the question is really whether these Defendants will be castigated or bankrupted by an award of punitive damages. I think not. *Arab Termite, supra,* is instructive. It holds that an award of punitive damages "should be painful enough to provide some retribution and deterrence, but should not be allowed to destroy the defendant." 409 So. 2d at 1043. In this case, I find that an award of punitive damages will not destroy the Defendants. Their financial condition will be unaffected by such an award. The judgment for compensatory damages so far exceeds the assets they own, that a punitive damages award will have no material affect on their stated financial condition.

10.    I find that an award of $1,000,000 as punitive damages is appropriate in this case.

**C. Attorney's Fees**

11.    The Court has previously found that Plaintiffs are entitled to an award of attorney's fees and costs from Defendants Dana P. Brigham and Patricia M. Brigham. The Court reserves jurisdiction to determine the amount of attorney's fees and costs at a later date.

**D. Further Orders**

12.    It is further ordered and adjudged that the judgment debtor shall complete under oath Florida Rule of Civil Procedure From 1.977 (Fact Information Sheet), including all required attachments, and serve it on the judgment creditor's attorneys, or the judgment creditor if the judgment creditor is not represented by an attorney, within 45 days from the date of this final judgment, unless the final judgment is satisfied or post-judgment discovery is stayed.

13.    Jurisdiction of this case is retained to enter further orders that are proper to compel the judgment debtor(s) to complete form 1.977, including all required attachments, and serve it on the judgment creditor's attorney.

**WHEREFORE**, the Defendants, Dana P. Brigham and Patricia M. Brigham, at 9807 E. 25th Street, Parrish, Florida 34219, shall pay the EFP Brigham Land Trust No. 1, the sum of **$3,804,425.87**, and the Marion W. Brigham Revocable Trust the sum of **$4,131,486.58**, plus interest at the appropriate statutory rate from February 15, 2011, for which let execution issue. In addition, the Defendants, Dana P. Brigham and Patricia M. Brigham, at 9807 E. 25th Street, Parish, Florida 34219, shall pay the EFP Brigham Land Trust No. 1 and the Marion W. Brigham Revocable Trust punitive damages in the amount of $1,000,000, plus the appropriate statutory rate from the date of entry of this Final Judgment.

**DONE AND ORDERED** at Miami-Dade County, Florida, this 22nd day of February, 2011.

HERBERT STETTIN
Senior Circuit Judge

Copies furnished to:

Michael J. Schlesinger, Esq.
Bruce A. Katzen, Esq.
Wm. Fletcher Belcher, Esq.

6

M:\STETTIN\Circuit Court\Brigham-Brigham\Order on Mandate 6-4-10.wpd

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

PROBATE DIVISION

EDWARD BRIGHAM, SANDRA FORBES-
BERAN, DANA FORBES, ROBIN FORBES
and ALLEN FORBES,

      Plaintiffs,

v.

DANA BRIGHAM, individually and as
trustee of the Defendant trusts, PATRICIA
BRIGHAM, individually and as successor
trustee of the Defendant trust, the M'ARION W.
BRIGHAM TRUST NO. 1, the BLUE ROCK
LAND TRUST NO. 1, the SEVEN MILE
RIDGE LAND TRUST NO. 1, the RICE
ROAD LAND TRUST NO. 1, the HALLS
CHAPEL LAND TRUST NO. 1, the CLOUD
VALLEY LAND TRUST NO. 1, and the
COVES/JACKS CREEK LAND TRUST NO. 1,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.: 03-2561 CP 02

## ORDER ON THE MANDATE

The matter is before the Court on the Mandate of the Third District Court of Appeals in Brigham v. Brigham, 11 So. 3d 374, 388 (Fla. 3d DCA 2009) (the "Opinion"). The Court has reviewed the Opinion, Plaintiffs' Motion and Memorandum on Post Appellate Issues, Defendants' Reply to Plaintiffs' Motion and Memorandum on Post Appellate Issues, several drafts of Plaintiffs' proposed Final Judgment, Defendants' Objections to Proposed Final Judgment, the Defendants' Objections to Revised Proposed Final Judgment and the Court file. The Court has also heard argument from counsel on December 4, 2009 and on January 20, 2010, and is otherwise fully advised in the premises. Finally, the Court has reviewed Plaintiffs' Supplement to Motion and Memorandum on Post Appellate Issues, and Plaintiffs' Response to Defendants' Objections to Award of Punitive

# Exhibit "A"

Damages in Proposed Final Judgment Prepared by Plaintiffs, each submitted subsequent to the January 20, 2010 hearing. Upon consideration, the Court finds as follows:

1.      In its Opinion, the Third District concluded that both Dana Brigham and Patricia Brigham were liable for breaches of fiduciary duties owed to the Decedent, Marion W. Brigham. Defendant Dana Brigham breached fiduciary duties to the Decedent as both trustee and as her attorney. Brigham, 11 So. 3d at 386. Defendant Patricia Brigham breached fiduciary duties to the Decedent as her employee and as de facto trustee. Id. at 387. Therefore, each improper transfer that emanated from a breach of Defendants' fiduciary duties is an element of Plaintiffs' damages.

2.      The Opinion provided guidance as to the type of damages which are owed. It unambiguously held that "The Trial Court's Final Judgment is reversed with instructions to enter judgment in appellants' favor regarding the Brigham Tree Farms Property and to direct Dana and Patricia Brigham to repay the proceeds from the sale of the Brigham Tree Farms Property with interest to the EFP Land Trust." Id. at 388.

3.      In addition, the Opinion instructed this Court to enter Judgment for the value of all conflicted transactions. It held: "Accordingly, because we conclude that the Brigham Tree Farms Property transfer must be voided, the Final Judgment dealing with all of the other conflicted transactions where Dana and Patricia transferred properties to themselves must be reversed." Id. at 386. It further states: "Finally, the trial court failed to set aside numerous other trustee payments, 'gifts,' and other conflicted transfers made by Dana Brigham to himself and his wife Patricia. These actions were all breaches of [Dana and Patricia's] fiduciary duties." Id. at 383.

- 2 -

4.    The damages evidence at trial included the report of Alan Goldberg, Plaintiffs' forensic accounting expert, as amended during his testimony. It provided an analysis of the amount of damages claimed as to each conflicted transaction. On October 19, 2009, Mr. Goldberg amended his report to re-calculate pre-judgment interest through November 1, 2009.

5.    Because the parlor piano, Zampighi painting and an all terrain vehicle are property of the Estate of Marion W. Brigham, the Court does not have jurisdiction over those properties and makes no ruling as to whether or not they were improperly transferred.

6.    It is therefore ordered that the EFP Brigham Land Trust No. 1 is entitled to recover from Dana P. Brigham and Patricia M. Brigham, jointly and severally, the sum of $3,519,580.89, together with interest since November 1, 2009, computed as follows:

     (a)    $2,050,486.00, plus statutory interest of $1,358,119.31, totaling $3,408,605.31 as damages for the transfer of the Brigham Tree Farms Property by Dana Brigham to himself;

     (b)    $64,785.47, plus statutory interest of $46,190.11, totaling $110,975.58 as damages for the transfer of the 24% interest of the EFP Brigham Land Trust to Dana Brigham.

7.    The Marion W. Brigham Revocable Trust is entitled to receive from Dana P. Brigham and Patricia M. Brigham, jointly and severally, the sum of $3,822,153.91, together with interest since November 1, 2009, computed as follows:

(a)     $120,000.00, plus statutory interest of $56,093.28, totaling $176,093.28 as damages for the transfer of the Webb Property from Marion Brigham to Patricia Brigham;

(b)     $291,630.33, plus statutory interest of $376,359.905, totaling $667,990.28 as damages for the sums paid to Patricia as gifts and/or salary;

(c)     $365,462.58, plus statutory interest of $694,888.54, totaling $1,060,351.12, as damages for unsubstantiated disbursements from Marion Brigham's accounts as either reimbursements or as cash to the Defendants together with disbursements for which no explanation was provided at trial;

(d)     $213,792.16, plus statutory interest of $215,814.69, totaling $429,606.84 as damages for gifts to Dana and Patricia Brigham, based upon Plaintiffs' Trial Exhibit 256;

(e)     $427,234.00, plus statutory interest of $832,037.28, totaling $1,259,271.28 as damages for the investment of Marion W. Brigham's money into Hughes Laboratories;

(f)     $3,800.00, plus statutory interest of $2,759.54, totaling $6,550.54 as damages for the investment of Marion W. Brigham's money into Sekot Laboratories, Inc.;

(g)     $44,195.00, plus statutory interest of $80,854.04, totaling $125,048.89 as damages for the investment of Marion W. Brigham's money into Motors, Incorporated; and

- 4 -

CASE NO.: 03-2561 CP 02

(h)   $88,293.15, as damages for the investment of Marion W. Brigham's money into the Titusville, Florida property.

8.   The Court reserves jurisdiction to consider claims for attorney's fees and costs.

9.   The Court surcharges Dana P. Brigham the amounts he is required to pay against his share of each of the Trusts as a result of his wrongdoing.

10.   In the event Patricia M. Brigham, individually, is entitled to receive any money from the Trusts described above, her interest is surcharged for the payment of all sums found to be due from her.

11.   Ruling as to the Plaintiffs' claims for punitive damages is reserved. The parties are to simultaneously brief the issue within 20 days of this Order. The Court will determine the issue without further argument.

DONE and ORDERED at Miami-Dade County, Florida this 14 day of June, 2010.

HERBERT STETTIN
Senior Circuit Judge

Copies Furnished to:
    Michael J. Schlesinger, Esquire
    Bruce A. Katzen, Esquire
    Kimberly A. Bald, Esquire
    Wm. Fletcher Belcher, Esquire
    David R. Carlisle, Esquire

- 5 -